FILED

**NOT FOR PUBLICATION**

JUL 06 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10204 |
| Plaintiff - Appellee, | D.C. No. 3:11-cr-00625-EMC-1 |
| v. | MEMORANDUM[*] |
| BASSAM YACOUB SALMAN, aka Bessam Jacob Salman, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Hon. Edward M. Chen, District Judge, Presiding

Argued and Submitted June 9, 2015
San Francisco, California

Before: CHRISTEN and WATFORD, Circuit Judges, and RAKOFF, Senior
District Judge.[**]

Defendant-Appellant Bassam Yacoub Salman appeals his conviction,

following jury trial, for one count of conspiracy to commit securities fraud in

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

violation of 18 U.S.C. § 371 and four counts of securities fraud in violation of 15

U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1 and 240.10b5-2,

and 18 U.S.C. § 2. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we

affirm.[1]

Salman's convictions arose from an insider-trading scheme involving his

extended family. The underlying facts and procedural history are set forth in the

opinion filed concurrently with this memorandum disposition. As relevant here, the

Government presented evidence at trial that Salman caused his brother-in-law,

Karim Bayyouk, to trade on material non-public information that Salman received

from other members of his family using a brokerage account in which Salman had

an undisclosed interest. On May 31, 2007, attorneys from the Securities and

Exchange Commission ("SEC") interviewed Bayyouk, who falsely denied having

received information from anyone before making the relevant trades. A recording

of that interview (the "Bayyouk Interview") was played for the jury at Salman's

trial. Salman now claims the admission of the Bayyouk Interview violated the

Confrontation Clause, and, in any event, should have been excluded under Federal

---

[1] The panel granted Salman's motion to file a supplemental brief addressing the effect, if any, of the Second Circuit's opinion in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014). That issue is addressed in a separate opinion filed concurrently with this memorandum disposition.

Rules of Evidence 401–403. He further argues that the district court erred in giving a "deliberate ignorance" instruction and that the cumulative effect of the district court's errors rendered his trial fundamentally unfair.[2]

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the use of testimonial out-of-court statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 68. It is well established, however, that this Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9; *see also United States v. Mitchell*, 502 F.3d 931, 966 (9th Cir. 2007). Here, it is undisputed that the Bayyouk Interview was chiefly introduced to show that Bayyouk lied to the SEC. Salman notes, however, that on summation, the prosecutor, in response to Salman's argument that his transactions with Bayyouk were somehow related to the restaurant business in which they both had an interest, made the following argument:

> First and most important, to test this defense, I want you to please consider what Karim Bayyouk said about his trading with Mr. Salman.

---

[2] With respect to several of Salman's claims, the parties disagree as to the applicable standard of review. Because we find that the district court did not err regardless of which standard is applied, we need not resolve these disputes.

He never said his trading with Mr. Salman was business-related. Far from it. *Mr. Bayyouk told the SEC that his trading had nothing to do with business, let alone business with Bassam Salman.*

(Emphasis added.)

Although he did not object at trial, Salman now contends that the final sentence quoted above demonstrates that the Government relied on some of Bayyouk's statements for their truth.

When viewed in context, however, it is clear that in making the above argument, the prosecutor was relying on the Bayyouk Interview, not for what Bayyouk actually said, but rather for what he failed to say.[3] The thrust of the Government's argument was that, if the transactions had been legitimate and business-related, then Bayyouk would have simply told the SEC as much. The fact that he failed to do so suggests that they were not. This was a non-testimonial use of the Bayyouk Interview, and therefore does not offend the Confrontation Clause.

_____

[3] In fact, at no point during the interview did Bayyouk tell the SEC that "his trading had nothing to do with business, let alone business with Bassam Salman." Thus, there was no underlying statement on which the Government could have relied for its truth. Although the sentence that Salman identifies may have mischaracterized the evidence to some extent, that does not transform the Government's non-hearsay use of the Bayyouk Interview into a Confrontation Clause violation.

Second, Salman argues that the admission of the Bayyouk Interview was erroneous because it is irrelevant. Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action," and Federal Rule of Evidence 402 requires that irrelevant evidence be excluded. In this case, however, the fact that Bayyouk lied strongly suggests that he knew the trading to be improper, which, in the circumstances, reasonably suggests in turn that Salman indicated to him it was improper. Therefore, Bayyouk's false statements tended to establish Salman's consciousness of guilt, and their admission was not in error. *See United States v. Hackett*, 638 F.2d 1179, 1185–86 (9th Cir. 1980).

Third, Salman contends that, even if the Bayyouk Interview was relevant, the district court should have excluded it because its probative value was "substantially outweighed" by the danger of "unfair prejudice." Fed. R. Evid. 403. Salman argues that it was unfair to taint him with Bayyouk's false statements, particularly because Bayyouk could have learned that the trading was improper as a result of the SEC investigation and not because of anything that Salman told him at the time the transactions

took place. Salman was, however, free to the argue to the jury that any inference about his own state of mind was unwarranted. Evidence is not unfairly prejudicial merely because it damages the defendant's case. *See United States v. Bowen*, 857 F.2d 1337, 1341 (9th Cir. 1988) ("[T]he more probative the evidence is, the more damaging it is apt to be."). Because the Bayyouk Interview was probative and posed little danger of unfair prejudice, its admission was not erroneous.

Fourth, Salman argues that the district court erred by giving a deliberate ignorance instruction. As a general matter, a party is entitled to a particular instruction "if it is supported by law and has foundation in the evidence." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Deliberate ignorance involves "(1) a subjective belief that there is a high probability a fact exists; and (2) deliberate actions taken to avoid learning the truth." *United States v. Yi*, 704 F.3d 800, 804 (9th Cir. 2013). In deciding whether to give a deliberate ignorance instruction, the district court must determine whether, viewing the evidence in the light most favorable to the party requesting the instruction, "the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) (en banc).

Salman contends that a deliberate ignorance instruction was not warranted because the Government presented no evidence that he took any deliberate action to avoid learning the source of Michael Kara's tips. He relies on *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011), in which the Supreme Court noted that the doctrine of deliberate ignorance (also referred to as willful blindness), has two basic requirements, "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact," and that "these requirements give willful blindness an appropriately limited scope that surpasses recklessness and negligence." *Id.* at 2070. Salman urges that *Global-Tech* established that mere failure to investigate is insufficient to find deliberate ignorance.

Salman's reliance on *Global-Tech* is misplaced. In that case, the Supreme Court did not alter the standard for deliberate ignorance; rather, it imported the well-established criminal standard into the civil context of a claim for inducement to patent infringement. *Id.* at 2068–69; *cf. United States v. Goffer*, 721 F.3d 113, 128 (2d Cir. 2013) (stating that *Global-Tech* "did not alter or clarify the [deliberate ignorance] doctrine" and "simply describes existing case law"). Consistent with this understanding, our post-

*Global-Tech* cases make clear that, at least under circumstances where a reasonable person would make further inquiries, "[a] failure to investigate can be a deliberate action." *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013); *see also Yi*, 704 F.3d at 805 (citing *Global-Tech* and holding that deliberate ignorance instruction was warranted where jury could infer that defendant "engaged in a deliberate pattern of failing to read documents").

In this case, there were ample reasons why a person in Salman's position would seek to discover the source of the information. The Government's evidence showed that Salman was investing large sums of money on short notice, in companies in which he had never invested previously. Moreover, the information was both highly accurate and inherently proprietary in nature, suggesting that it came from a source with inside access to the various companies. Finally, Salman knew the Kara family well, and therefore the jury could reasonably infer that he was aware of Maher's employment at Citigroup and of the Kara brothers' close relationship. Thus, if the jury believed that Salman did not actually know that the information was coming from Maher Kara, then it could rationally have concluded that the reason he did not know was that he deliberately

refrained from asking. Accordingly, the district court did not err in giving the deliberate ignorance instruction.

Finally, because there was no error, there can be no cumulative error. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002), *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473, 482 (2000).

**AFFIRMED.**