**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff - Appellee*,

v.

CHARLES YI, AKA Jang Ho Yi,
   *Defendant - Appellant*.

No. 11-50234

D.C. No.
2:10-cr-00793-
PA-1

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
November 6, 2012–Pasadena, California

Filed January 2, 2013

Before: Alfred T. Goodwin and Diarmuid F. O'Scannlain,
Circuit Judges, and Jack Zouhary, District Judge.[*]

Opinion by Judge Goodwin

---

[*] The Honorable Jack Zouhary, District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel affirmed a jury conviction and sentence for conspiracy to violate the Clean Air Act arising from the defendant's role as CEO of a real estate development company that contracted to have condominium ceilings scraped and refinished without proper asbestos disposal or notice.

The panel held that the district court did not err in giving or formulating a deliberate ignorance jury instruction, did not err in applying a sentence enhancement for an offense resulting in substantial likelihood of death or serious bodily injury, and did not err in applying an enhancement for the defendant's role as an organizer or leader.

## COUNSEL

Marilyn Bednarski, Kaye, McLane & Bednarski LLP, Pasadena, California, for Defendant-Appellant.

John E. Arbab, United States Department of Justice, Environmental & Natural Resources Division, Washington, D.C., for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

GOODWIN, Circuit Judge:

Charles Yi appeals his conviction and sentence, assigning error to a jury instruction, and to his custodial sentence for conspiracy to violate the Clean Air Act. The judgment is affirmed.

## I. FACTS

Yi was the CEO of Millennium Pacific Icon Group, a real estate development company. In April 2004, Millennium purchased Forest Glen, a 204-unit condominium complex, after Yi and some of his Millennium associates did a walk-through of the property.

Joseph Yoon, Millennium's Forest Glen project manager, testified that Yi commented during the walk-through that he was certain the ceilings contained asbestos because of the age of the building. Yi's sister, Sheri Yi Hill, was also present at the walk-through. Hill testified that she discussed the ceilings with Yi and the two decided not to touch the ceilings because they assumed the ceilings contained asbestos, which would be costly to remove.

Yi signed a purchase offer for Forest Glen that included a due diligence clause allowing time to review environmental materials and to conduct an environmental review. The seller provided a due diligence binder that included two Phase I environmental reports and an "Operations and Maintenance Plan for Asbestos-Containing Materials" ("The O&M Plan"). The reports contained test results showing the presence of asbestos in the ceilings. The O&M Plan incorporated the test

results and stated that it was developed to minimize exposure to the release of asbestos fibers. Yoon testified that he presented the due diligence binder to Yi and identified its contents. Yoon also testified that Yi asked another employee to assess the diligence materials with respect to the building's physical condition, including the environmental aspects. The employee prepared a handwritten summary. Yoon testified that he typed the summary into a one-page document and handed it to Yi.

According to Yoon, Yi subsequently instructed him to secure a bid for removing the asbestos from the Forest Glen ceilings. Yoon contacted Sky Blue Environmental in June 2004, and ultimately received a $437,000 proposal for asbestos abatement. Yoon testified that Yi indicated he would not pursue the abatement because he felt it was unnecessary for selling the units. Yoon also testified that Yi rejected a later bid to install drywall over the ceilings, which would have cost anywhere from $1,800 to $2,800 per unit. Millennium employee Timothy Yu testified that Yi said asbestos abatement would be too expensive.

After Millennium purchased Forest Glen, an agent for Millennium's insurance carrier visited the property, observed ceiling material on the ground, and took a sample to test for asbestos. The agent later emailed Millennium employee Andrew Lavaux, stating that the test showed 1% asbestos. Yi testified that he was told the sample came back "negative," but Lavaux testified that he never told Yi the sample was asbestos-free. Lavaux also testified that he never heard anyone else tell Yi that the sample was asbestos-free.

In September 2005, unit sales at Forest Glen began to slow and evidence showed Yi became concerned about the

slowdown in November 2005. Yoon testified that Yi instructed him to draw up a contract to have the condominium ceilings scraped and refinished, and on January 16, 2006, Millennium contracted to have the ceilings scraped. The agreed-upon price broke down to $1,500 per unit for the first ten—less per unit than either the previously rejected bid for asbestos abatement or for installing drywall over the ceilings. The contractor, Rudys Palacios, testified that no one informed him that the ceilings contained asbestos. Palacios hired four or five men to do the scraping. They wore no special clothing to protect against asbestos exposure and only "white masks." He also stated that powdery ceiling material was simply placed into bags and wheelbarrows before being thrown into dumpsters.

A state inspector, Larry Israel, testified that the work site was one of the worst he had ever seen and that ceiling material was blowing everywhere: public walkways, sidewalks, driveways, and around the dumpsters.

Yi testified that he did not remember being shown the due diligence binder; he never read either environmental report; and he did not believe Forest Glen's ceilings contained asbestos because one of the Millennium managers had told him that the insurance agent's asbestos test "came [back] negative" for asbestos. According to Yi, he was not shown the actual test results; he simply trusted the manager. As to the abatement work, Yi testified that he was not involved in choosing the ceiling-scraping crew, and did not know who made the choice or how it was made.

Yi also offered testimony about the closing documents, claiming he did not read the due diligence paragraph and its reference to environmental review. According to Yi, he read

and complied with the "Good Faith Deposit" provision of KeyBank's conditional letter of interest, but specifically did not read the immediately preceding "Environmental" provision which called for an environmental report. He also said he did not read any portion of the ultimate loan agreement with KeyBank despite signing it. Yi then denied reading an email sent to him containing items needed prior to closing the loan—specifically denying that he read the email's reference to the requirement of a Phase I environmental report. He also denied reading an email sent to him the day of closing in which KeyBank stated it needed the O&M Plan to be in place to close the loan.

## II. THE DELIBERATE IGNORANCE INSTRUCTION

Yi argues that the district court erred in giving a jury instruction on deliberate ignorance, asserting that it was not warranted because the facts shown at trial did not support a finding of deliberate ignorance. The district court instructed the jury using the Ninth Circuit model instruction:

> You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant:
>
> 1. was aware of a high probability that there was asbestos in the ceilings at Forest Glen Condominiums, and
>
> 2. deliberately avoided learning the truth.
>
> You may not find such knowledge, however, if you find that the defendant actually believed that there was no asbestos in the

>ceilings at the Forest Glen Condominiums, or
>if you find that the defendant was simply
>careless.

A district court's decision to give a particular jury instruction is reviewed for abuse of discretion. *United States v. Heredia*, 483 F.3d 913, 921 (9th Cir. 2007) (en banc). An instruction's substance is reviewed de novo. *Id.* An instruction is appropriate if it is "supported by law and has foundation in the evidence." *Id.* at 922. As such, "the district court must view the evidence in the light most favorable to the party requesting it." *Id.* If a party requests alternative instructions, the district court considers them separately to "determine if the evidence could support a verdict on either ground." *Id.*

Willful blindness is inconsistent with actual knowledge, and thus a deliberate ignorance instruction is appropriate only where "the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge." *Id.* Deliberate ignorance contains two prongs: (1) a subjective belief that there is a high probability a fact exists; and (2) deliberate actions taken to avoid learning the truth. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011).

Regarding the first *Global-Tech* prong, testimony from Hill, Yoon, and Yi himself supports an inference that Yi was aware of a high probability that the Forest Glen ceilings contained asbestos. Both Hill and Yoon testified that Yi commented on the likelihood that the Forest Glen ceilings contained asbestos during their initial walk-through. Yi's 16-year experience in property management bolsters the evidence that he suspected the ceilings contained asbestos, as the age of the Forest Glen building and the ceiling's physical

appearance would, according to both Hill and Yi's own testimony, have put a person experienced in property management on notice of the likelihood that it contained asbestos. While he argues that the insurance company's supposedly negative test allayed his suspicions, that inference need not be drawn when viewing the evidence in the government's favor. Thus, there was sufficient evidentiary support for the first *Global-Tech* prong.

Turning to the second *Global-Tech* prong, if the jury could infer that Yi was aware of a high probability that the ceilings contained asbestos, it also could infer that Yi engaged in a deliberate pattern of failing to read documents that might clarify whether asbestos was in fact present. The jury would not be required to believe Yi's argument that he was very busy, that he trusted all of his subordinates to read everything for him, or even that he was told the insurance company's test had come back "negative" for asbestos. The evidence regarding Yi's real estate experience and pattern of failing to read documents common to real estate transactions supports a finding that Yi deliberately avoided learning the truth about whether the Forest Glen ceilings contained asbestos.

Yi attempts to analogize this case with some that have found the evidence could not support finding deliberate ignorance. *See, e.g.*, *United States v. Baron*, 94 F.3d 1312 (9th Cir. 1996), *overruled by Heredia*, 483 F.3d 913. But those cases are factually distinguishable, with records very different from the record here.

Yi also argues that the instruction itself was legally flawed. He primarily takes issue with the term "simply careless." Yi argues that instructing a jury that it may not find

knowledge where a defendant is "simply" careless leaves the door open for some other level of carelessness. But *Heredia* makes clear that the Ninth Circuit model instruction is appropriate "and there is little reason to suspect that juries will import [recklessness or negligence] concepts, as to which they are not instructed, into their deliberations." 483 F.3d at 924. The district court did not err in giving or formulating the deliberate ignorance instruction.

## III. THE GUIDELINE SENTENCE

We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Holt*, 510 F.3d 1007, 1010 (9th Cir. 2007). Factual determinations at sentencing are reviewed for clear error, and the application of the Guidelines to the facts is reviewed for abuse of discretion. *Id.* "Clear error is not demonstrated by pointing to conflicting evidence in the record." *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991). Instead, "[a] finding of fact is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Harries v. United States*, 350 F.2d 231, 235 (9th Cir. 1965).

Here, the district court calculated Yi's total offense level as 31 under the Guidelines. In reaching that level, the court applied, and Yi now challenges, two enhancements: a nine-level enhancement for committing an environmental offense that "resulted in a substantial likelihood of death or serious bodily injury," § 2Q1.2(b)(2); and a four-level enhancement for being "an organizer or leader of a criminal activity that involved five or more participants," § 3B1.1(a). The enhancements resulted in a sentencing range of 108–135 months. However, the court granted several downward

departures, resulting in a final sentencing range of 51–63 months.  Ultimately, the court sentenced Yi to 48 months.

## A. Substantial Likelihood of Death or Serious Bodily Injury

We look to whether the district court's application of a nine-level increase for an offense resulting in a substantial likelihood of death or serious bodily injury was supported by clear and convincing evidence.  *See United States v. Staten*, 466 F.3d 708, 720 (9th Cir. 2006).  Clear and convincing evidence creates a conviction that the factual contention is "highly probable."  *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

Evidence presented at trial showed that the work crew removing the Forest Glen ceilings did not wear proper respirators, were exposed to dry ceiling material, and that on-site dust far exceeded industry-recommended levels of asbestos.  The evidence at sentencing, aside from the actual on-site conduct, came primarily from an EPA letter discussing chrysotile—the form of asbestos present at Forest Glen.   The letter supports finding that chrysotile is carcinogenic.  Contrary to the defense expert's report, the EPA letter noted a lack of evidence to support using different toxicity factors for different types of asbestos.  Even if the evidence did support this approach, it would not disturb the EPA's baseline conclusion that chrysotile is a carcinogen.  Moreover, studies cited in the letter support finding increased risk of lung cancer, mesothelioma, asbestosis, and cancer of the pleura from exposure to the chrysotile form of asbestos.

In addition to the EPA letter, the district court also appeared to rely on *United States v. Pearson*, 274 F.3d 1225 (9th Cir. 2001), where this court wrote:

> The federal government has recognized asbestos as a health hazard and it is generally accepted that exposure to asbestos can cause mesothelioma, asbestosis, lung cancer; and cancers of the esophagus, stomach, colon, and rectum. Pearson's noncompliance with the work practice standards created a substantial likelihood that workers would be exposed to life-threatening asbestos fibers.

*Id.* at 1235 (citation omitted). Yi argues that *Pearson* involved a different type of asbestos and is therefore inapplicable. However, the opinion makes no such legal distinction. In sum, the combined evidence of the removal crew's on-site conduct and the potential harm from inhaling *any* form of asbestos places the district court's finding outside the realm of clear error.

Yi's arguments to the contrary are unpersuasive. First, he contends the government failed to provide an expert to establish the foundation for the enhancement. But there is no such requirement. Second, Yi contends the district court improperly rejected his own expert's testimony. But the district court both considered and permissibly gave little or no weight to the defense expert's opinion. Yi attempts to compare this case to *United States v. Altman*, 901 F.2d 1161, 1165 (9th Cir. 1990), but there the district court refused to hear the proffered expert testimony. The record here clearly reflects that the district court considered the expert report.

Yi's more forceful contention is that the district court should have given his expert's opinion more weight. Generally, the trier of fact is entrusted with discretion in weighing evidence. *See In re Rains*, 428 F.3d 893, 902 (9th Cir. 2005). There is no reason to believe the district court abused its discretion, even assuming it largely discounted the expert opinion. The expert report can be summed up as stating: (1) chrysotile is different in form from other types of asbestos; (2) chrysotile is less "toxic"; (3) the Forest Glen work crew wetted down ceiling materials while working; (4) the work crew wore respirators; (5) the ceilings contained less than 10% chrysotile; and (6) the work crew's low level of exposure combined with the supposed lower toxicity of chrysotile resulted in an insufficient likelihood of death or serious bodily injury. However, the contrary evidence detailed above entitled the district court to weigh all the facts and reject the expert's opinion.

Yi also complains that the district court improperly discounted the report based upon the expert's lack of medical or molecular biology training. But the district court's inquiry into training merely created a basis for discounting the expert's *medical* opinions as to toxicity and likelihood of harm. This was well within the district court's discretion. The only seemingly uncontroverted statement in the expert report, that chrysotile is different in form from other types of asbestos, did not require the district court to adopt the expert's opinion as to likelihood of harm. The district court's failure to give the expert opinion more weight was not an abuse of discretion and the ultimate finding was not clear error.

## B.  Organizer or Leader Role

The district court also found that Yi fit the role of an organizer or leader calling for a four-level increase.  That finding requires evidence "that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime."  *United States v. Ingham*, 486 F.3d 1068, 1074 (9th Cir. 2007) (emphasis omitted) (citing *United States v. Avila*, 95 F.3d 887, 889 (9th Cir. 1996)).  It must be supported by a preponderance of the evidence.  *Avila*, 95 F.3d at 889.  This finding is also reviewed for clear error.  *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir. 1995).

Numerous facts support the role enhancement.  Yi's conviction plus substantial evidence at trial support the conclusion that he knew the ceilings contained asbestos.[1] Testimony showed that Yi was heavily involved in decision-making with regard to Forest Glen, particularly given the inexperience of Millennium project managers and Yoon in particular.  Evidence showed: Yi earlier instructed Yoon to seek bids for asbestos abatement; Yi rejected abatement bids; Millennium employees awaited Yi's ultimate approval prior to removal; and Yi instructed Yoon to draw up the contract for ceiling scraping.  These facts support a permissible inference that Yi directed the ceilings be scraped, approving both the expenditure and the work itself, rather than simply placing his signature on a check made out to the contractor. The district court did not clearly err in finding by a

---

[1] Even if the jury only found Yi guilty under a deliberate ignorance theory, that finding is legally equivalent to knowledge.  *United States v. Jewell*, 532 F.2d 697, 702–03 (9th Cir. 1976).

preponderance of the evidence that Yi was an organizer or leader.

Yi paints the district court's finding as the result of an improper "but for" test. It would be improper to find that Yi organized or led a criminal activity merely because the activity could not have been completed but for his knowledge and participation. *United States v. Lopez-Sandoval*, 146 F.3d 712, 717 (9th Cir. 1998); *United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir. 1994). At the sentencing hearing, defense counsel explained that Yi was required to approve expenditures over a few thousand dollars, at which point the district judge asked, "[m]y question is if [Yi] doesn't okay it, we're [not] here today. There's nobody else that made this decision. He was the final arbiter; correct?" Defense counsel agreed.

This colloquy shows the enhancement was not based on on the necessity of Yi's *involvement* as the check signer, but rather on Yi's *direction or control.* The district court did not apply an incorrect legal test, and the application of the role enhancement was proper.

**AFFIRMED.**