**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>JESUS PIMENTEL-LOPEZ,<br>*Defendant-Appellant.* | No. 14-30210<br><br>D.C. No.<br>2:13-cr-00024-SEH-1<br><br>OPINION |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, Senior District Judge, Presiding

Argued and Submitted October 15, 2015
Seattle, Washington

Filed July 15, 2016

Before: Alex Kozinski, William A. Fletcher
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Kozinski

## SUMMARY[*]

### Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which the jury made a special finding that the quantity of drugs involved was less than 50 grams, but the district judge calculated the sentence based on his own finding that the quantity involved was far in excess of 50 grams.

The panel wrote that the *Apprendi v. New Jersey* line of cases is beside the point because the defendant is not complaining that the district court raised the maximum statutory sentence, and that this is not a case where the jury failed to find a fact under the exacting standard applicable to criminal cases. The panel explained that this is a case where the jury made an affirmative finding after deliberations, under the highest standard of proof, that the amount of methamphetamine attributable to the defendant is less than 50 grams. The panel held that district judges do not have the power to contradict the jury's finding under these circumstances. The panel remanded with instructions that the defendant be resentenced on the premise that the quantity of drugs involved in his crimes was less than 50 grams.

The panel held that because two witness's hearsay statements did not meet the "minimal indicia of reliability" standard, the district court was not justified in relying on them in determining the sentence. Because absent these

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

statements, there is no evidence that the defendant exercised some control over others involved in the commission of the evidence, the panel held that the district court clearly erred in assessing an organizer enhancement pursuant to U.S.S.G. § 3B1.1(c).

## COUNSEL

Timothy M. Bechtold (argued), Bechtold Law Firm, PLLC, Missoula, Montana, for Defendant-Appellant.

Zeno B. Baucus (argued) and Michael S. Lahr, Assistant United States Attorneys; Michael W. Cotter, United States Attorney; United States Attorney's Office, Helena, Montana; for Plaintiff-Appellee.

## OPINION

KOZINSKI, Circuit Judge:

The jury in defendant's criminal case made a special finding that the quantity of drugs involved was "less than 50 grams." We consider whether the district judge may nevertheless calculate defendant's sentence based on the judge's finding that the quantity involved was far in excess of 50 grams.

## FACTS

Defendant was convicted of possession of methamphetamine with intent to distribute and conspiracy to possess with intent to distribute, in violation of 21 U.S.C.

§§ 841(a)(1) and 846. The punishment for both of these crimes is determined by section 841(b), which sets differential punishments, depending on drug type and quantity. If the quantity involved is less than 50 grams or an indeterminate amount, then the maximum sentence is 20 years. § 841(b)(1)(C). The statute sets higher minimum and maximum sentences for larger drug quantities. § 841(b)(1)(A)–(B).

With the consent of both parties, the court gave the jury a verdict form, which it filled out as follows:

> Having found Jesus Pimentel-Lopez guilty of the charge . . . we unanimously find beyond a reasonable doubt the amount of a substance containing a detectable amount of methamphetamine attributable to Jesus Pimentel-Lopez to be:
>
> __x__ Less than 50 grams of a substance containing a detectable amount of methamphetamine.
>
> _____ 50 grams or more, but less than 500 grams, of a substance containing a detectable amount of methamphetamine.
>
> _____ 500 grams or more of a substance containing a detectable amount of methamphetamine.

At sentencing, the district judge found that the actual quantity attributable to defendant's crimes was 4.536 kg,

which yielded a Sentencing Guidelines range of 235 to 293 months.[1]   The judge then sentenced defendant to 240 months—the statutory maximum sentence for a quantity of less than 50 grams.  § 841(b)(1)(C).  Had the court been bound by the jury's determination that the quantity attributable to Pimentel-Lopez was less than 50 grams, the sentencing range would have been 63–78 months.[2]   The court's 240-month sentence would then have represented a substantial upward departure.

## ANALYSIS

## I

The principal question presented is whether the district judge was entitled to make a drug quantity finding in excess of that found by the jury in its special  verdict.  The district court believed it was entitled to do so because "[t]here is no increase in the statutory maximum sentence beyond the 20 years or 240 months that is charged in the [i]ndictment."

In reaching its conclusion, the district court relied on *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), and its

---

[1] Under the then-applicable Sentencing Guidelines section 2D1.1(c) the offense level for possessing at least 1.5 kg but less than 5 kg of methamphetamine was 34.  The court also assessed a two-level enhancement under Guidelines section 3B1.1(b) upon finding that Pimentel-Lopez was an organizer of the conspiracy.  The corresponding sentencing range for a net offense level of 36 and a criminal history category of III was 235 to 293 months.  *See* U.S.S.G., ch. 5, pt. A (Nov. 2013).

[2] Assuming a level 24 offense under section 2D1.1(c), a criminal history category of III and no organizer enhancement.  *See* U.S.S.G., ch. 5, pt. A.

progeny, which leave it up to the district judge to find any facts bearing on sentencing, other than those that would increase the statutory sentencing range. *See, e.g.*, *Alleyne* v. *United States*, 133 S. Ct. 2151, 2163 (2013); *Apprendi*, 530 U.S. at 481. But the *Apprendi* line of cases is beside the point, because defendant is not complaining that the district court raised the maximum statutory sentence. Rather, he argues that the court's finding that the drug quantity found was *more* than 50 grams contradicts the jury's special finding that the drug quantity was *less* than 50 grams. The jury found "beyond a reasonable doubt [that] the amount of [methamphetamine] attributable to Jesus Pimentel-Lopez [is] . . . [l]ess than 50 grams." This is not a case where the jury failed to find a fact under the exacting standard applicable to criminal cases. *See, e.g.*, *United States* v. *Watts*, 519 U.S. 148, 157 (1997) (per curiam). Where this happens, the district judge is free to find the same fact under a less stringent standard of proof. *Id.* Rather, what we have here is a case where the jury made an affirmative finding, under the highest standard of proof known to our law, that the amount of methamphetamine attributable to defendant is less than 50 grams. The district court cannot attribute more than that amount to defendant without contradicting the jury on a fact it found as a result of its deliberations. District judges have many powers, but contradicting juries as to findings of facts they have been asked to make is not among them.

In reaching the contrary conclusion, the district judge overlooked our caselaw on point. In *Mitchell* v. *Prunty*, 107 F.3d 1337, 1339 n.2 (9th Cir. 1997), *overruled on other grounds by Santamaria* v. *Horsley*, 133 F.3d 1242, 1248 (9th Cir. 1998) (en banc), we noted as follows: "Special findings . . . are dispositive of the questions put to the jury. Having agreed to the questions, the government cannot now ask us to

ignore the answers; to do so would be a clear violation of petitioner's Sixth Amendment rights."

The precise issue presented in *Mitchell* differed slightly from that presented here, but the difference actually makes ours an easier case. In *Mitchell* we considered whether there was sufficient evidence to convict petitioner of murder when the only evidence of his involvement was one witness's testimony that he drove the car that ran over the victim's body. *Id.* at 1342. We concluded that there was insufficient evidence to support the verdict because the jury had elsewhere made a special finding that petitioner "was not the driver of the car which drove over" the victim. *Id.*

In its petition for rehearing, the state asked us to ignore the special finding as a case of inconsistent verdicts. *Id.* at 1339 n.2. We treated the special finding as binding even on the jury itself. *Id.* The special finding must also be binding on the parties and the court.

In our case, the jury was asked to find the upper limit of the quantity of illegal drugs involved in Pimentel-Lopez's crimes, and it did just that:   "[T]he amount of [methamphetamine] attributable to Jesus Pimentel-Lopez [is] . . . [l]ess than 50 grams." This was not a gratuitous finding added by the jury of its own accord as in *Floyd* v. *Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991). The parties presented evidence on point and the jury was instructed that this was a permissible finding. In such circumstances, the finding is binding, no matter how inconvenient it may be in subsequent proceedings.

Some of our sister circuits seem to have held that a jury's special-verdict finding that the quantity of drugs involved in

the crime is less than a particular amount did not preclude the judge from finding a greater quantity for purposes of sentencing. *See United States* v. *Webb*, 545 F.3d 673, 677 (8th Cir. 2008); *United States* v. *Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005); *United States* v. *Goodine*, 326 F.3d 26, 33–34 (1st Cir. 2003); *United States* v. *Smith*, 308 F.3d 726, 745–46 (7th Cir. 2002). But those cases did not directly address the argument raised by Pimentel-Lopez—that the affirmative finding by the jury that the quantity of drugs involved was less than a specific amount precluded a contradictory finding by the district judge during sentencing.

All four cases held that the district court's sentencing did not violate the *Apprendi* line of cases. But, as explained above, *Apprendi* has no bearing on our analysis. In addition, the other circuits addressed the drug quantity finding only in passing, while emphasizing the less demanding preponderance-of-the-evidence standard governing judicial factfinding at sentencing. *See Webb*, 545 F.3d at 676–77; *Smith*, 308 F.3d at 745–46. They therefore implicitly relied on the holding of *Watts* to the effect that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. at 157. The rationale of *Watts* is that "[a]n acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt." *Id.* at 155 (quoting *United States* v. *Putra*, 78 F.3d 1386, 1394 (9th Cir. 1996) (Wallace, C.J., dissenting)). This rationale is inapplicable where, as here, we have an affirmative finding that the amount in question is less than a particular amount. Or, to put it differently, there is no inconsistency between a jury's acquittal as to a particular fact that had to be proved beyond

a reasonable doubt and a later finding that the same fact is proved by a preponderance of the evidence. But there *is* an inconsistency between a jury's finding that the amount is *less* than 50 grams and a later finding by the judge that the amount is *more* than 50 grams.

Some of our sister circuits seem to have assumed that the juries' findings merely acquitted defendants of possessing higher quantities of drugs, and that may have been warranted on the record before them. *See, e.g.*, *Magallanez*, 408 F.3d at 682 ("When we review a verdict where the jury did not find a *specific* amount of drugs attributable to the defendant, but a *range*, we only know that the jury found unanimously the amount at the bottom of the range."). Here, by contrast, the record is clear that the jury didn't merely acquit defendant of possessing 50 grams or more of methamphetamine; it made an affirmative finding "beyond a reasonable doubt" that the amount attributable to defendant was "[l]ess than 50 grams." Our own caselaw, and simple logic, precludes us from vouchsafing sentencing judges the power to make contradictory findings under these circumstances.

Our conclusion does raise a fair question: How is it possible to punish a defendant convicted of crimes involving less than 50 grams to the full statutory term of 240 months, when the Sentencing Guidelines cap the term available when the drug quantity involved is less than 50 grams at 125 months? In other words, does a jury's finding that the quantity of drugs falls in the 0 to 50 range always preclude a district judge from punishing the defendant for quantities in excess of 50 grams? The judge may, of course, depart upward from the sentencing range generated by the jury's findings. Also, where the jury makes no finding as to quantity or finds an unspecified amount, there would be no

inconsistency between the verdict and any quantity that the judge finds during sentencing. And any jury finding that does not set an upper boundary would leave the district court free to find a greater quantity in determining the sentencing range.

In our case, the government agreed to special verdict questions that set both a lower and an upper boundary for the amount of drugs involved. That may have been a blunder, but the jury answered the questions it was asked and so the die is cast: The government cannot disavow the finding that the jury makes as a result. 107 F.3d at 1339 n.2. Because the district court enhanced defendant's sentence based on its finding that more than 50 grams of a controlled substance were involved in defendant's crimes, we must vacate the sentence and remand with instructions that defendant be resentenced on the premise that the quantity of drugs involved in his crimes was less than 50 grams, as the jury found.

## II

The district court also applied a two-level enhancement under Guidelines section 3B1.1(c) upon finding that Pimentel-Lopez directed the behavior of his co-conspirators. Under section 3B1.1(c), "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity," courts are instructed to increase a defendant's offense by two levels. The application notes to section 3B1.1 clarify that "[t]o qualify for an adjustment . . . the defendant must have" either "been the organizer, leader, manager, or supervisor of one or more other participants" or must have "exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1 n.2.

"A court may impose this enhancement if there is evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States* v. *Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (internal quotation marks omitted). But "even a defendant with an important role in an offense cannot receive an enhancement unless there is also a showing that the defendant had control over others." *Id.* (internal quotation marks omitted).

The government introduced scant evidence that Pimentel-Lopez directed his co-conspirators. During Pimentel-Lopez's sentencing hearing, an agent testified that Jesus Elizondo—a co-conspirator who didn't testify—said that Pimentel-Lopez directed Elizondo's fiancée, Heather Mallo, and Mallo's sister, Elizabeth Gardiner, to rent a house "to be used . . . to distribute drugs." Mallo corroborated this allegation during a pre-trial police interview.[3] But when Mallo and Gardiner testified at Pimentel-Lopez's trial, neither mentioned that he directed them to rent a residence. Moreover, Gardiner testified that she couldn't even communicate with Pimentel-Lopez because she didn't speak Spanish. During an interview with the investigating agents and before entering his guilty plea, Elizondo declared that Pimentel-Lopez directed two individuals to deposit the proceeds of the drug sales into a bank account. But this statement was only corroborated by Mallo's pre-trial statements to the police, not by her trial testimony.

---

[3] To the extent that we refer here to facts contained exclusively in the presentence report, we pro tanto lift the order sealing that document.

"Generally, hearsay evidence . . . may be used in sentencing," but "we require that 'some minimal indicia of reliability accompany a hearsay statement.'" *United States* v. *Huckins*, 53 F.3d 276, 279 (9th Cir. 1995) (quoting *United States* v. *Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993)). Elizondo's "statements were not made under oath, nor at trial where he could be cross-examined." *Id.* Furthermore, "a codefendant's confession inculpating the accused is inherently unreliable." *Lee* v. *Illinois*, 476 U.S. 530, 546 (1986). This "time-honored teaching" is equally applicable in the sentencing as in the conviction context. *See Huckins*, 53 F.3d at 279 (quoting *Lee*, 476 U.S. at 546).

"[E]xternal consistency" may demonstrate "the reliability of hearsay statements by co-defendants." *United States* v. *Berry*, 258 F.3d 971, 976 (9th Cir. 2001). "Specifically, hearsay statements by co-defendants that are consistent with each other may be deemed sufficiently reliable even if such statements are self-serving and contrary to the testimony of the defendant." *Id.* at 976–77. Here, Elizondo's statements were only corroborated by his fiancée, and even then only out of court. Gardiner's testimony that she couldn't communicate with Pimentel-Lopez casts further doubt on Elizondo's and Mallo's hearsay statements. In light of these facts, Elizondo's hearsay statements have not been "sufficiently corroborated . . . to provide the minimal indicia of reliability necessary to qualify the statements for consideration by the district court during sentencing." *Id.* at 977.

Because Elizondo's and Mallo's hearsay statements do not meet our "minimal indicia of reliability" standard, the district court was not justified in relying on them in determining Pimentel-Lopez's sentence. Absent these

statements, there is no evidence indicating that Pimentel-Lopez "exercised some control over others involved in the commission of the offense." *United States* v. *Yi*, 704 F.3d 800, 807 (9th Cir. 2013). It was therefore clearly erroneous to assess the organizer enhancement. *See id.*

\*          \*          \*

We **VACATE** Pimentel-Lopez's sentence and **REMAND** for resentencing.