**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 14-30210 |
| v. | D.C. No. 2:13-cr-00024-SEH-1 |
| JESUS PIMENTEL-LOPEZ, *Defendant-Appellant.* | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, Senior District Judge, Presiding

Argued and Submitted October 15, 2015
Seattle, Washington

Filed July 15, 2016
Amended June 1, 2017

Before: Alex Kozinski, William A. Fletcher
and Raymond C. Fisher, Circuit Judges.

Order;
Dissent to Order by Judge Graber;
Opinion by Judge Kozinski

## SUMMARY*

### Criminal Law

The panel filed an order denying a petition for rehearing en banc and an amended opinion vacating a sentence and remanding for resentencing in a case in which the jury made a special finding that the quantity of drugs involved was less than 50 grams, but the district judge calculated the sentence based on his own finding that the quantity involved was far in excess of 50 grams.

The panel wrote that the *Apprendi v. New Jersey* line of cases was beside the point because the defendant was not complaining that the district court raised the maximum statutory sentence, and that this was not a case where the jury failed to find a fact under the exacting standard applicable to criminal cases. The panel explained that this was a case where the jury made an affirmative finding after deliberations, under the highest standard of proof, that the amount of methamphetamine attributable to the defendant is less than 50 grams. The panel held that district judges do not have the power to contradict the jury's finding under these circumstances. The panel remanded with instructions that the defendant be resentenced on the premise that the quantity of drugs involved in his crimes was less than 50 grams.

The panel held that because two witness's hearsay statements did not meet the "minimal indicia of reliability" standard, the district court was not justified in relying on

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

them in determining the sentence. Because absent these statements, there is no evidence that the defendant exercised some control over others involved in the commission of the offense, the panel held that the district court clearly erred in assessing an organizer enhancement pursuant to U.S.S.G. § 3B1.1(c).

Dissenting from the denial of rehearing en banc, Judge Graber, joined by Judges Tallman, Bybee, Callahan, Bea, and Ikuta, wrote that the panel's holding regarding the amount of drugs was wrong both as a matter of logic and as a matter of Supreme Court law, had far-reaching consequences for the prosecution of drug crimes in the Ninth Circuit, and conflicted with the holdings of other circuits. Judge Graber wrote that the jury found specifically that the government had proved its case beyond a reasonable doubt with respect to less than 50 grams of methamphetamine. The sentencing judge, though, found that the government had proved by a preponderance of the evidence that the quantity of drugs was greater than 50 grams and sentenced the defendant accordingly. Judge Graber wrote that the district judge's finding as to drug weight did not contradict the jury's finding and was permissible under *Apprendi* and *United States v. Watts*, 519 U.S. 148 (1997) (per curiam).

## COUNSEL

Timothy M. Bechtold (argued), Bechtold Law Firm, PLLC, Missoula, Montana, for Defendant-Appellant.

Zeno B. Baucus (argued) and Michael S. Lahr, Assistant United States Attorneys; Leif M. Johnson, Acting United States Attorney; United States Attorney's Office, Helena, Montana; for Plaintiff-Appellee.

## ORDER

The opinion filed July 15, 2016, and appearing at 828 F.3d 1173, is **AMENDED** as reflected in the attached amended opinion. The petition for rehearing en banc is **DENIED**. No further petitions for rehearing will be considered.

GRABER, Circuit Judge, with whom TALLMAN, BYBEE, CALLAHAN, BEA, and IKUTA, Circuit Judges, join, dissenting from denial of rehearing en banc:

I respectfully dissent from the denial of rehearing en banc. The panel held that when a jury finds that the amount of drugs the government has proved, beyond a reasonable doubt, is attributable to a defendant falls within a specified range, the sentencing judge may not find by a preponderance of the evidence that the amount of drugs attributable to the defendant is higher than that range. *United States v. Pimentel-Lopez*, 828 F.3d 1173, 1176–77 (9th Cir. 2016). That holding is wrong both as a matter of logic and as a

matter of Supreme Court law, it has far-reaching consequences for the prosecution of drug crimes in our circuit, and it conflicts with holdings in other circuits. For all those reasons, we should have reheard this case en banc.

I

A jury convicted Defendant Jesus Pimentel-Lopez of possessing methamphetamine, with intent to distribute it, and conspiracy to accomplish the same. The jury found specifically that the government had proved its case beyond a reasonable doubt with respect to less than 50 grams of methamphetamine. The sentencing judge, though, found that the government had proved by a preponderance of the evidence that the quantity of drugs was greater than 50 grams and sentenced Defendant accordingly. The sentence imposed did not exceed the maximum sentence for the quantity of less than 50 grams, which the jury had found; rather, the court imposed the statutory maximum for a quantity of less than 50 grams. *Id.* at 1175. The panel nonetheless vacated the sentence on the ground that the jury's finding as to drug weight "precluded a contradictory finding by the district judge during sentencing." *Id.* at 1177. In fact, the district judge's finding as to drug weight did not contradict the jury's finding and was permissible under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Watts*, 519 U.S. 148 (1997) (per curiam).

II

The panel's opinion first errs by misconstruing what the jury found. The jury answered the following question on the verdict form:

Having found Jesus Pimentel-Lopez guilty of the charge . . . we unanimously find beyond a reasonable doubt the amount of a substance containing a detectable amount of methamphetamine attributable to Jesus Pimentel-Lopez to be:

  x   Less than 50 grams of a substance containing a detectable amount of methamphetamine.

_____ 50 grams or more, but less than 500 grams, of a substance containing a detectable amount of methamphetamine.

_____ 500 grams or more of a substance containing a detectable amount of methamphetamine.

*Pimentel-Lopez*, 828 F.3d at 1175. Again and again, the opinion characterizes the jury's finding as an "affirmative" finding, beyond a reasonable doubt, that the amount of methamphetamine attributable to Defendant's crimes was less than 50 grams. *Id.* at 1176, 1177. In other words, the panel reads the jury's special verdict to say, "we find that the drug quantity was less than 50 grams, and beyond a reasonable doubt the amount did not exceed 50 grams," rather than to say simply, "we find that the government proved beyond a reasonable doubt that some quantity of drugs was attributable to the defendant and, of these three options, that quantity falls into the 'less than 50 grams' category."

To be fair, the precise wording of the verdict form, read in isolation, does admit the construction that the panel gave

it.  But we do not read a verdict form, much less a portion of a verdict form, in isolation, and neither does a jury.  A verdict form must be interpreted in light of the jury instructions and in the context of the trial as a whole.  *United States v. Hartz*, 458 F.3d 1011, 1022 n.9 (9th Cir. 2006); *United States v. Pineda-Doval*, 614 F.3d 1019, 1031 (9th Cir. 2010).  Here, the context was a drug trial in which the government offered evidence of several drug transactions tied to a conspiracy.  In that context, a finding by the jury that the amount of drugs attributable to Defendant was less than $x$ grams, with $x$ being a number smaller than the total quantity of drugs that the government sought to attribute to Defendant at trial, was a finding *only* that the amount of drugs that the government proved beyond a reasonable doubt to be attributable to Defendant was less than $x$ grams.  It was not a finding of any kind about amounts greater than $x$ grams.  Under the panel's reading of the verdict form, though, the jury found that the government proved beyond a reasonable doubt that the amount *did not exceed $x$* grams—something that the instructions did not ask the jury to find.

An example will further illustrate the illogic of the panel's interpretation.  Suppose that the government offered evidence in this case of two drug transactions, each involving 45 grams of a substance containing a detectable amount of methamphetamine.  Suppose further that the jury is persuaded beyond a reasonable doubt that one transaction occurred and that the amount was attributable to Defendant, but that the jury is persuaded to a lesser degree as to the second transaction.  Under my reading of the verdict form, the jury would, as it did here, check the box for less than 50 grams.  But under the panel's analysis, the jury *could not check any box* because it did not (and in this example it could not) find

beyond a reasonable doubt that the amount attributable to Defendant did not exceed 50 grams.

The panel has amended its opinion to include a proposed verdict form that "capture[s] the view that the government is now attributing to the jury." Revised panel op. at 18–19. But the fact that there is some other formulation that might have reflected the jury's factual findings even more clearly says nothing about how the actual verdict form in this case should be interpreted. A verdict form such as the one in this case is best understood to mean that the government proved its case only with respect to some amount of drugs weighing less than 50 grams. *See, e.g.*, *United States v. Young*, 609 F.3d 348, 357 (4th Cir. 2010) ("By determining that the evidence presented at trial established that [the defendant's] crimes involved . . . less than five kilograms of cocaine, the jury in this case effectively acquitted [the defendant] of involvement with the distribution of more than five kilograms. The district court was free to consider, as it would with any other acquitted conduct, whether the government could establish a higher quantity under a preponderance of the evidence standard.").

III

Given what the jury *actually* found in this case—as opposed to what the panel erroneously concluded that the jury found—the district judge's drug-weight finding was consistent with the jury's finding. As the panel's opinion acknowledges, at least four other circuits have held that "a jury's special-verdict finding that the quantity of drugs involved in [a] crime is less than a particular amount [does] not preclude [a] judge from finding a greater amount for purposes of sentencing." *Pimentel-Lopez*, 828 F.3d at 1176.

Those cases relied, either explicitly or implicitly, on the rationale of *Watts*.[1] In *Watts*, the Supreme Court held that a jury verdict of acquittal "does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. at 157. Here, the jury was given three ranges: It was asked whether Defendant was responsible for less than 50 grams; 50 to 500 grams; or 500 grams or more of a substance containing a detectable amount of methamphetamine. By marking the smallest option, the jury in effect acquitted Defendant of the greater charges—that is, the greater amounts that the government had sought to prove. But, under *Watts*, the trial judge was permitted to consider evidence of those greater amounts and make a higher drug-weight finding by a preponderance of the evidence.

The panel's opinion distinguishes *Watts* and the opinions of our sister circuits by reasoning that the "rationale [of *Watts*] is inapplicable where, as here, we have an affirmative finding that the amount in question is less than a particular amount." *Pimentel-Lopez*, 828 F.3d at 1177. That being so,

---

[1] *See United States v. Webb*, 545 F.3d 673, 677 (8th Cir. 2008) ("[A] district court may impose a sentence based on a drug quantity determination greater than that found by the jury so long as the sentence does not exceed the statutory maximum of the convicted offense and the district court's calculation is supported by sufficient evidence."); *United States v. Magallanez*, 408 F.3d 672, 683–85 (10th Cir. 2005) (rejecting the argument that a "district court [i]s required to accept the jury's special verdict of drug quantity for purposes of sentencing, rather than calculating that amount for itself"); *United States v. Goodine*, 326 F.3d 26, 32–34 (1st Cir. 2003) (similar); *United States v. Smith*, 308 F.3d 726, 743–45 (7th Cir. 2002) (similar). Several other circuits have come to the same conclusion. *See, e.g.*, *United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006).

the panel explains, there can be no "acquittal." *Id.* But that reasoning is flawed, because it rests on the panel's misreading of the verdict form.

The panel also distinguishes the decisions of our sister circuits by noting that those courts "seem to have assumed that the juries' findings merely acquitted defendants of possessing higher quantities of drugs." *Id.* In several of those cases, as in this case, the jury found a drug amount attributable to the defendant that was "less than" some value. *See, e.g.*, *United States v. Webb*, 545 F.3d 673, 677 (8th Cir. 2008) (stating that "the jury found beyond a reasonable doubt that [the defendants] conspired to distribute between five and fifty grams of cocaine base," but "the district court sentenced the defendants based on its finding that the conspiracy involved between fifty and 150 grams of cocaine base"). According to the panel, our sister circuits have been "assuming"—perhaps erroneously, hints the panel—that such findings mean one thing, when in fact they mean something entirely different. *Pimentel-Lopez*, 828 F.3d at 1177. That is one possibility. I submit that a more likely possibility is that our sister circuits have *correctly* understood the meaning of the jury findings in the cases before them, and that it is the panel that erred.

Which brings me to the importance of this case. The panel takes pains to avoid saying that its decision creates a circuit split, positing that our sister circuits' "assumptions" regarding the meaning of jury drug-weight findings "may have been warranted on the record before them." *Id.* But that is hard to square with the panel's reasoning, which suggests that *any* jury finding as to drug weight that sets an "upper boundary" precludes a sentencing judge from finding a drug weight above that boundary by a preponderance of the

evidence. Every circuit to consider the issue has held that a sentencing judge may find a higher drug amount than the amount found by the jury, even when the jury's finding sets an upper boundary. Given that fact, it is difficult to see how the panel's decision does not create a circuit split—one with this circuit alone on an island.

This case also has serious practical consequences. The verdict form filled out by the jury was not identical to the one found in the Ninth Circuit Manual of Model Criminal Jury Instructions, but it was substantially similar to that form. *See* 9th Cir. Model Crim. Jury Instruction 9.16. Because many district courts use the model instructions or some variation thereof, the panel's opinion casts doubt on a large number of sentences in drug cases. The panel's opinion invites a deluge of 28 U.S.C. § 2255 petitions to "correct" sentences that were correct to begin with.

The panel's opinion represents an unfortunate misstep, and I regret our decision not to correct that misstep by rehearing this case en banc.

## OPINION

KOZINSKI, Circuit Judge:

The jury in defendant's criminal case made a special finding that the quantity of drugs involved was "less than 50 grams." We consider whether the district judge may nevertheless calculate defendant's sentence based on the judge's finding that the quantity involved was far in excess of 50 grams.

**FACTS**

Defendant was convicted of possession of methamphetamine with intent to distribute and conspiracy to possess with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The punishment for both of these crimes is determined by section 841(b), which sets differential punishments, depending on drug type and quantity. If the quantity involved is less than 50 grams or an indeterminate amount, then the maximum sentence is 20 years. § 841(b)(1)(C). The statute sets higher minimum and maximum sentences for larger drug quantities. § 841(b)(1)(A)–(B).

With the consent of both parties, the court gave the jury a verdict form, which it filled out as follows:

> Having found Jesus Pimentel-Lopez guilty of the charge . . . we unanimously find beyond a reasonable doubt the amount of a substance containing a detectable amount of methamphetamine attributable to Jesus Pimentel-Lopez to be:
>
> __x__ Less than 50 grams of a substance containing a detectable amount of methamphetamine.
>
> _____ 50 grams or more, but less than 500 grams, of a substance containing a detectable amount of methamphetamine.

> 500 grams or more of a substance containing a detectable amount of methamphetamine.

At sentencing, the district judge found that the actual quantity attributable to defendant's crimes was 4.536 kg, which yielded a Sentencing Guidelines range of 235 to 293 months.[1]    The judge then sentenced defendant to 240 months—the statutory maximum sentence for a quantity of less than 50 grams.  § 841(b)(1)(C).  Had the court been bound by the jury's determination that the quantity attributable to Pimentel-Lopez was less than 50 grams, the sentencing range would have been 63–78 months.[2]   The court's 240-month sentence would then have represented a substantial upward departure.

## ANALYSIS

## I

The principal question presented is whether the district judge was entitled to make a drug quantity finding in excess of that found by the jury in its special  verdict.  The district

---

[1] Under the then-applicable Sentencing Guidelines section 2D1.1(c) the offense level for possessing at least 1.5 kg but less than 5 kg of methamphetamine was 34.    The court also assessed a two-level enhancement under Guidelines section 3B1.1(b) upon finding that Pimentel-Lopez was an organizer of the conspiracy.  The corresponding sentencing range for a net offense level of 36 and a criminal history category of III was 235 to 293 months.  *See* U.S.S.G., ch. 5, pt. A (Nov. 2013).

[2] Assuming a level 24 offense under section 2D1.1(c), a criminal history category of III and no organizer enhancement.  *See* U.S.S.G., ch. 5, pt. A.

court believed it was entitled to do so because "[t]here is no increase in the statutory maximum sentence beyond the 20 years or 240 months that is charged in the [i]ndictment."

In reaching its conclusion, the district court relied on *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), and its progeny, which leave it up to the district judge to find any facts bearing on sentencing, other than those that would increase the statutory sentencing range. *See, e.g.*, *Alleyne* v. *United States*, 133 S. Ct. 2151, 2163 (2013); *Apprendi*, 530 U.S. at 481. But the *Apprendi* line of cases is beside the point, because defendant is not complaining that the district court raised the maximum statutory sentence. Rather, he argues that the court's finding that the drug quantity found was *more* than 50 grams contradicts the jury's special finding that the drug quantity was *less* than 50 grams. The jury found "beyond a reasonable doubt [that] the amount of [methamphetamine] attributable to Jesus Pimentel-Lopez [is] . . . [l]ess than 50 grams." This is not a case where the jury failed to find a fact under the exacting standard applicable to criminal cases. *See, e.g.*, *United States* v. *Watts*, 519 U.S. 148, 157 (1997) (per curiam). Where this happens, the district judge is free to find the same fact under a less stringent standard of proof. *Id.* Rather, what we have here is a case where the jury made an affirmative finding, under the highest standard of proof known to our law, that the amount of methamphetamine attributable to defendant is less than 50 grams. The district court cannot attribute more than that amount to defendant without contradicting the jury on a fact it found as a result of its deliberations. District judges have many powers, but contradicting juries as to findings of facts they have been asked to make is not among them.

In reaching the contrary conclusion, the district judge overlooked our caselaw on point.  In *Mitchell* v. *Prunty*, 107 F.3d 1337, 1339 n.2 (9th Cir. 1997), *overruled on other grounds by Santamaria* v. *Horsley*, 133 F.3d 1242, 1248 (9th Cir. 1998) (en banc), we noted as follows:  "Special findings . . . are dispositive of the questions put to the jury.  Having agreed to the questions, the government cannot now ask us to ignore the answers; to do so would be a clear violation of petitioner's Sixth Amendment rights."

The precise issue presented in *Mitchell* differed slightly from that presented here, but the difference actually makes ours an easier case.  In *Mitchell* we considered whether there was sufficient evidence to convict petitioner of murder when the only evidence of his involvement was one witness's testimony that he drove the car that ran over the victim's body.  *Id.* at 1342.  We concluded that there was insufficient evidence to support the verdict because the jury had elsewhere made a special finding that petitioner "was not the driver of the car which drove over" the victim.  *Id.*

In its petition for rehearing, the state asked us to ignore the special finding as a case of inconsistent verdicts.  *Id.* at 1339 n.2.  We treated the special finding as binding even on the jury itself.  *Id.*  The special finding must also be binding on the parties and the court.

In our case, the jury was asked to find the upper limit of the quantity of illegal drugs involved in Pimentel-Lopez's crimes, and it did just that:  "[T]he amount of [methamphetamine] attributable to Jesus Pimentel-Lopez [is] . . . [l]ess than 50 grams."  This was not a gratuitous finding added by the jury of its own accord as in *Floyd* v. *Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991).  The parties presented

evidence on point and the jury was instructed that this was a permissible finding. In such circumstances, the finding is binding, no matter how inconvenient it may be in subsequent proceedings.

Some of our sister circuits seem to have held that a jury's special-verdict finding that the quantity of drugs involved in the crime is less than a particular amount did not preclude the judge from finding a greater quantity for purposes of sentencing. *See United States* v. *Webb*, 545 F.3d 673, 677 (8th Cir. 2008); *United States* v. *Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005); *United States* v. *Goodine*, 326 F.3d 26, 33–34 (1st Cir. 2003); *United States* v. *Smith*, 308 F.3d 726, 745–46 (7th Cir. 2002). But those cases did not directly address the argument raised by Pimentel-Lopez—that the affirmative finding by the jury that the quantity of drugs involved was less than a specific amount precluded a contradictory finding by the district judge during sentencing.

All four cases held that the district court's sentencing did not violate the *Apprendi* line of cases. But, as explained above, *Apprendi* has no bearing on our analysis. In addition, the other circuits addressed the drug quantity finding only in passing, while emphasizing the less demanding preponderance-of-the-evidence standard governing judicial factfinding at sentencing. *See Webb*, 545 F.3d at 676–77; *Smith*, 308 F.3d at 745–46. They therefore implicitly relied on the holding of *Watts* to the effect that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. at 157. The rationale of *Watts* is that "[a]n acquittal can only be an acknowledgment that the government failed to prove an essential element of the

offense beyond a reasonable doubt." *Id.* at 155 (quoting *United States* v. *Putra*, 78 F.3d 1386, 1394 (9th Cir. 1996) (Wallace, C.J., dissenting)). This rationale is inapplicable where, as here, we have an affirmative finding that the amount in question is less than a particular amount. Or, to put it differently, there is no inconsistency between a jury's acquittal as to a particular fact that had to be proved beyond a reasonable doubt and a later finding that the same fact is proved by a preponderance of the evidence. But there *is* an inconsistency between a jury's finding that the amount is *less* than 50 grams and a later finding by the judge that the amount is *more* than 50 grams.

Some of our sister circuits seem to have assumed that the juries' findings merely acquitted defendants of possessing higher quantities of drugs, and that may have been warranted on the record before them. *See, e.g.*, *Magallanez*, 408 F.3d at 682 ("When we review a verdict where the jury did not find a *specific* amount of drugs attributable to the defendant, but a *range*, we only know that the jury found unanimously the amount at the bottom of the range."). Here, by contrast, the record is clear that the jury didn't merely acquit defendant of possessing 50 grams or more of methamphetamine; it made an affirmative finding "beyond a reasonable doubt" that the amount attributable to defendant was "[l]ess than 50 grams." Our own caselaw, and simple logic, precludes us from vouchsafing sentencing judges the power to make contradictory findings under these circumstances.

Our conclusion does raise a fair question: How is it possible to punish a defendant convicted of crimes involving less than 50 grams to the full statutory term of 240 months, when the Sentencing Guidelines cap the term available when the drug quantity involved is less than 50 grams at 125

months? In other words, does a jury's finding that the quantity of drugs falls in the 0 to 50 range always preclude a district judge from punishing the defendant for quantities in excess of 50 grams? The judge may, of course, depart upward from the sentencing range generated by the jury's findings. Also, where the jury makes no finding as to quantity or finds an unspecified amount, there would be no inconsistency between the verdict and any quantity that the judge finds during sentencing. And any jury finding that does not set an upper boundary would leave the district court free to find a greater quantity in determining the sentencing range.

In our case, the government proposed the verdict form that set both a lower and an upper boundary for the amount of drugs involved. Having proposed the language, the government now urges us to read the verdict form as "acquitt[ing] [Pimentel-Lopez] on the 500-gram amount," with which he was initially charged. But none of the choices offered by the verdict form were capable of capturing that view. That may have been a blunder, but the jury answered the questions it was asked and so the die is cast: The government cannot disavow the finding that the jury makes as a result. 107 F.3d at 1339 n.2.

A different verdict form certainly could have captured the view that the government is now attributing to the jury:

> **1.** We, the Jury, unanimously find beyond a reasonable doubt the Defendant, Jesus Pimentel-Lopez:
>
> NOT GUILTY      ____
>
> GUILTY              ____

of conspiracy to possess controlled substances with the intent to distribute, as charged in the Indictment.

If you find Jesus Pimentel-Lopez not guilty, do not answer Question 1a.  If you find Jesus Pimentel-Lopez guilty, then answer Question 1a.

**1a.**    Having found Jesus Pimentel-Lopez guilty of the charge, do you also unanimously find that the government proved beyond a reasonable doubt that the amount of controlled substance attributable to Jesus Pimentel-Lopez was:

50 grams or more of a mixture or substance containing a detectable amount of methamphetamine?  Yes _____  No _____

500 grams or more of a mixture or substance containing a detectable amount of methamphetamine?  Yes _____  No _____

*See* 21 U.S.C. § 841(a), (b)(1)(A)(viii), (b)(1)(B)(viii).

If the district court had presented this verdict form and the jury had answered "Guilty" to the first question and "No" to both sentencing questions, that would mean that the government had proven beyond a reasonable doubt some measurable amount of drug in the 0 to 50 gram range.  The government would then have been free to prove more than 50 grams at sentencing.  Nothing prevented the government from proffering such a form.  But, having proposed a form

that required the jury to find that the drug quantity was less than 50 grams, the government locked itself out of the possibility of proving more than 50 grams at sentencing. It can easily avoid this pitfall in future cases.

That the verdict form used in this case was similar to our circuit's model verdict form is of no consequence. Model instructions and forms are not authoritative; they merely reflect the case law in our circuit as the Ninth Circuit Jury Instructions Committee understands it. Indeed, this committee is constantly revising jury instructions in response to our opinions. *See, e.g.*, Ninth Circuit Jury Instructions Committee, Manual of Model Criminal Jury Instructions 137, 222, 225 (2010) (discussing changes in the model jury instructions prompted by our opinions); *see also United States* v. *Acosta-Sierra*, 690 F.3d 1111, 1118 & n.3 (9th Cir. 2012) (noting that a model jury instruction was revised to accurately reflect Ninth Circuit law); *United States* v. *Thongsy*, 577 F.3d 1036, 1043 n.5 (9th Cir. 2009) (holding that a model jury instruction "should be revised to clarify [that] there are two ways to prove an offense under [18 U.S.C.] § 924(c)"). It would stand the model jury instruction process on its head to base our analysis on the model jury instructions.

Going forward, the Jury Instructions Committee may well revise the model verdict form for determining the amount of controlled substance for § 841(b)(1) purposes, as they frequently do. But our review today must be based on the verdict form that was actually used in this case. Using this verdict form, the jury found that the amount of controlled substance "attributable to Jesus Pimentel-Lopez [was] . . . [l]ess than 50 grams of a substance containing a detectable amount of methamphetamine." Despite this finding, the

district court enhanced defendant's sentence based on a contradictory finding that more than 50 grams of a controlled substance were involved in defendant's crimes. Because the district court may not contradict an affirmative finding by the jury, we must vacate the sentence and remand with instructions that defendant be resentenced on the premise that his crimes involved less than 50 grams of drugs.

## II

The district court also applied a two-level enhancement under Guidelines section 3B1.1(c) upon finding that Pimentel-Lopez directed the behavior of his co-conspirators. Under section 3B1.1(c), "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity," courts are instructed to increase a defendant's offense by two levels. The application notes to section 3B1.1 clarify that "[t]o qualify for an adjustment . . . the defendant must have" either "been the organizer, leader, manager, or supervisor of one or more other participants" or must have "exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1 n.2.

"A court may impose this enhancement if there is evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States* v. *Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (internal quotation marks omitted). But "even a defendant with an important role in an offense cannot receive an enhancement unless there is also a showing that the defendant had control over others." *Id.* (internal quotation marks omitted).

The government introduced scant evidence that Pimentel-Lopez directed his co-conspirators.  During Pimentel-Lopez's sentencing hearing, an agent testified that Jesus Elizondo—a co-conspirator who didn't testify—said that Pimentel-Lopez directed Elizondo's fiancée, Heather Mallo, and Mallo's sister, Elizabeth Gardiner, to rent a house "to be used . . . to distribute drugs."  Mallo corroborated this allegation during a pre-trial police interview.[3]  But when Mallo and Gardiner testified at Pimentel-Lopez's trial, neither mentioned that he directed them to rent a residence.  Moreover, Gardiner testified that she couldn't even communicate with Pimentel-Lopez because she didn't speak Spanish.  During an interview with the investigating agents and before entering his guilty plea, Elizondo declared that Pimentel-Lopez directed two individuals to deposit the proceeds of the drug sales into a bank account.  But this statement was only corroborated by Mallo's pre-trial statements to the police, not by her trial testimony.

"Generally, hearsay evidence . . . may be used in sentencing," but "we require that 'some minimal indicia of reliability accompany a hearsay statement.'" *United States* v. *Huckins*, 53 F.3d 276, 279 (9th Cir. 1995) (quoting *United States* v. *Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993)).  Elizondo's "statements were not made under oath, nor at trial where he could be cross-examined."  *Id.*  Furthermore, "a codefendant's confession inculpating the accused is inherently unreliable."  *Lee* v. *Illinois*, 476 U.S. 530, 546 (1986).  This "time-honored teaching" is equally applicable in the sentencing as in the conviction context.  *See Huckins*, 53 F.3d at 279 (quoting *Lee*, 476 U.S. at 546).

---

[3] To the extent that we refer here to facts contained exclusively in the presentence report, we pro tanto lift the order sealing that document.

"[E]xternal consistency" may demonstrate "the reliability of hearsay statements by co-defendants." *United States* v. *Berry*, 258 F.3d 971, 976 (9th Cir. 2001). "Specifically, hearsay statements by co-defendants that are consistent with each other may be deemed sufficiently reliable even if such statements are self-serving and contrary to the testimony of the defendant." *Id.* at 976–77. Here, Elizondo's statements were only corroborated by his fiancée, and even then only out of court. Gardiner's testimony that she couldn't communicate with Pimentel-Lopez casts further doubt on Elizondo's and Mallo's hearsay statements. In light of these facts, Elizondo's hearsay statements have not been "sufficiently corroborated . . . to provide the minimal indicia of reliability necessary to qualify the statements for consideration by the district court during sentencing." *Id.* at 977.

Because Elizondo's and Mallo's hearsay statements do not meet our "minimal indicia of reliability" standard, the district court was not justified in relying on them in determining Pimentel-Lopez's sentence. Absent these statements, there is no evidence indicating that Pimentel-Lopez "exercised some control over others involved in the commission of the offense." *United States* v. *Yi*, 704 F.3d 800, 807 (9th Cir. 2013). It was therefore clearly erroneous to assess the organizer enhancement. *See id.*

\*     \*     \*

We **VACATE** Pimentel-Lopez's sentence and **REMAND** for resentencing.