REVISED January 21, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2008

Charles R. Fulbruge III
Clerk

No. 05-11394

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JORGE ARMANDO JUAREZ DUARTE, also known as Armando Duarte Juarez

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas, Fort Worth

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:

Defendant-appellant Jorge Armando Juarez Duarte appeals his sentence, arguing that the district court erred in increasing his sentence for obstruction of justice under the United States Sentencing Guidelines.[1] He also argues that the district court erred in refusing to reduce his offense level for acceptance of responsibility. For the following reasons, we AFFIRM.

---

[1] All references are to the 2004 edition of the U.S. SENTENCING GUIDELINES MANUAL (2004) (the "Guidelines" or the "Sentencing Guidelines"), which was used in preparing the presentencing report (the "PSR").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Juarez-Duarte, a native and citizen of Mexico, was removed and deported from the United States to Mexico in August 1992, after a conviction for an aggravated felony, distribution of cocaine, on March 6, 1991. In October 1996, the defendant was found in the United States and deported to Mexico through the Port of Entry at Laredo, Texas. On or about March 31, 2005, Juarez-Duarte was again found in the United States. He had not applied for or received permission from the Attorney General or the Secretary of the Department of Homeland Security of the United States for reentry into the country after his 1996 deportation.

On April 8, 2005, the government filed a complaint alleging that Juarez-Duarte was found in the United States after being ordered removed and deported subsequent to a conviction for an aggravated felony. That day, Juarez-Duarte made his initial appearance before the magistrate judge. When asked if he could understand and speak English clearly, Juarez-Duarte said he could. Nonetheless, the magistrate judge asked if he would like an interpreter for the hearing. In English, Juarez-Duarte replied, "If she's here, yes."

On April 13, 2005, Juarez-Duarte was indicted for illegal reentry after deportation in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2); and 6 U.S.C. §§ 202(3), 202(4), and 557. The magistrate judge held a detention hearing, which Juarez-Duarte attended and participated in without the assistance of an interpreter. From this, the district court inferred that the magistrate judge and Juarez-Duarte's Spanish-speaking attorney had determined that Juarez-Duarte did not need an interpreter. On April 21, 2005, Juarez-Duarte was arraigned for the first time. He pleaded not guilty. No interpreter was present, and when asked by the district judge if he had read the indictment, he replied in English that he had.

Juarez-Duarte was rearraigned to change his plea on June 17, 2005. An interpreter was present for the first two defendants called, who were represented by the same attorney as Juarez-Duarte. He, however, did not request an interpreter or seek the assistance of the interpreter present. Juarez-Duarte was sworn in and warned that answering any questions falsely could result in prosecution for perjury or making a false statement. Again, the district judge asked Juarez-Duarte if he could "read, write and understand and speak the English language proficiently." Under oath, he replied, "Yes," and proceeded to actively engage the district court using conversational English. First, Juarez-Duarte identified himself. Then, the following conversation took place in English when Juarez-Duarte was called to enter his plea:

> The Court:          . . . how far did you go in school?
>
> The Defendant:   Sixth grade.
>
> The Court:          And where did you go to school?
>
> The Defendant:   Down in El Paso.
>
> The Court:          In El Paso?
>
> The Defendant:   Yes. I go a couple of years here in Fort Worth.
> . . . .
> The Court:          What school did you go to here?
>
> The Defendant:   I can't remember. It was on Jennings Street and Rosedale.

Their exchange continued with Juarez-Duarte telling the court that he worked in the oil fields and answering yes and no questions about his mental and emotional health, as well as whether he was under the influence of drugs or alcohol.

After reading the indictment, including the reference to his prior aggravated felony conviction for distribution of cocaine, the district judge asked Juarez-Duarte if he understood the charges. He replied, "Yes, but I'm confused on the distribution," and then clarified, "Yes, I understand, but I'm confused on the charge of distribution." The district court determined that the distribution charge was surplusage in the indictment, and that the prior conviction would increase the applicable statutory penalty range. Then, the court presented the factual resume and asked if Juarez-Duarte had read it before he signed it. Juarez-Duarte replied, "I read it before I signed it." When asked if he had any complaint with his counsel, Juarez-Duarte said, "No, no complaints at all." The district court conveyed the maximum sentence for the offense charged, and, satisfied that Juarez-Duarte understood, accepted his guilty plea. On June 28, 2005, a probation officer interviewed Juarez-Duarte in the presence of his attorney in English without any difficulty.

At his sentencing hearing on September 30, 2005, for the first time, Juarez-Duarte requested an interpreter, claiming that he did not clearly understand everything that had happened during the rearraignment. The district court expressed concern about the expense and delay of using an interpreter when there is no need and inquired why he had not requested one at any previous hearing. Defense counsel said that Juarez-Duarte's past experience before the district court led him to request an interpreter because although he understood the prior proceedings "fine," he wanted an interpreter at his sentencing hearing to understand "well."[2] The district court opined that the interpreter was not necessary because Juarez-Duarte had not required one

---

[2] While Juarez-Duarte initially requested the interpreter at the September 30, 2005, sentencing hearing to better understand the proceeding, his motion for an interpreter at his third arraignment and subsequent sentencing hearing stated that he needed an interpreter for his allocution. The district court did not expressly note this potential inconsistency, but it arguably lends credence to the district court's finding.

at his detention hearing or at either of his prior arraignments, and he seemed to communicate and understand English well when he pleaded guilty. However, due to concern that his request would raise an issue as to the validity of his guilty plea, the district court set aside the plea, warning Juarez-Duarte that an improper request for an interpreter could have an effect on his sentencing.

At a third arraignment on October 20, 2005, with the aid of an interpreter, Juarez-Duarte again pleaded guilty to illegal reentry. At that time, the district court ordered the probation officer to conduct an inquiry into whether Juarez-Duarte should still receive a reduction in his offense level based on acceptance of responsibility, and whether he should receive an enhancement for obstruction of justice, and to include the relevant findings and conclusions on those issues in an addendum to the PSR.

On November 14, 2005, the probation officer re-interviewed Juarez-Duarte in the presence of his attorney and an interpreter. However, Juarez-Duarte communicated clearly with the officer in English. Based on this interview, plus the findings of the district court, the addendum recommended a two-level enhancement for obstruction of justice for "providing materially false information to a judge regarding his need for an interpreter." U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 cmt. n.4(f) (2004). Also, the PSR recommended that the reduction for acceptance of responsibility under § 3E1.1 was no longer warranted. These determinations increased Juarez-Duarte's total offense level from 21 to 26, and increased his sentence range from 46–57 months to 78–97 months. Juarez-Duarte objected to the amended PSR, but at his sentencing hearing on December 2, 2005, the district court overruled his objections and expressly adopted the PSR as to both findings of fact and conclusions of law, as modified or supplemented by the addendum, and any findings and conclusions made from the bench. Accordingly, he was sentenced to eighty-seven months in federal prison and three years supervised release, and assessed a $100 fine.

Juarez-Duarte filed a timely notice of appeal and now challenges the district court's calculation of his sentencing range, the reasonableness of his sentence, and the constitutionality of 8 U.S.C. § 1326(b).

## II.  DISCUSSION

### A.  Obstruction of Justice

Juarez-Duarte challenges the two-level enhancement of his sentence for obstruction of justice under § 3C1.1 of the Guidelines.  Specifically, he argues that the district court's factual finding that he willfully obstructed justice by falsely insisting under oath to the judge during sentencing that he needed an interpreter when in fact he did not was clearly erroneous, and that, even if the statements were made falsely, with the intent to obstruct justice, they were immaterial.

A district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, and its factual findings, such as a finding of obstruction of justice, are reviewed for clear error.  United States v. Adam, 296 F.3d 327, 334 (5th Cir. 2002).  There is no clear error if the district court's finding is plausible in light of the record as a whole.  United States v. Harms, 442 F.3d 367, 378 (5th Cir. 2006).  Further, we give deference to the credibility determinations of the district court.  Id.

Section 3C1.1 provides that a defendant's calculated offense level can be increased by two levels if "(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct . . . ."  U.S. SENTENCING GUIDELINES MANUAL § 3C1.1.  According to the commentary to § 3C1.1, such conduct includes "providing materially false information to a judge or magistrate."  Id. at cmt. n.4(f).  The commentary further defines material information to mean

6

that which "if believed, would tend to influence or affect the issue under determination." Id. at cmt. n.6.

In this case, the district court made an express factual finding that "the defendant has willfully obstructed and attempted to obstruct the administration of justice during the course of the prosecution of this action by his conduct in insisting that he needs an interpreter when in fact he does not." The district court further found that Juarez-Duarte's "obstructive conduct related to his offense of conviction and the sentencing for that offense, and consequently . . . that he should have a two-level increase in his guideline . . . offense level." We cannot say that these factual findings are clearly erroneous or implausible in light of the record as a whole.

In support of these findings, the district court expressly adopted the facts and conclusions from the PSR, as modified by the addendum, and made additional findings and conclusions from the bench. The adopted facts include findings that: (1) Juarez-Duarte did not request an interpreter until sentencing, after not needing one for his detention hearing or his first two arraignments, even though he had an interpreter present at his initial appearance; (2) the magistrate judge and Juarez-Duarte's Spanish-speaking attorney apparently concluded that he did not need an interpreter; (3) at his June 17, 2005, rearraignment, he swore under oath that he could speak, read, write, and understand English proficiently; (4) he was able to communicate effectively and fluently in English with the court and his probation officer and "clearly understood the English language that was used in the conduct" of his prior arraignments; (5) his probation officer could clearly understand him as he spoke in English during both of his PSR interviews; and (6) during his first sentencing hearing, his responses to questions about pleading guilty at his rearraignment caused the district court to believe that he "might be creating a record to support a contention that he did not understand what he was doing when he pleaded

guilty." From these findings, the district court reasoned that Juarez-Duarte "had no need for an interpreter at the arraignment and rearraignment proceedings, . . . [that he] clearly understood the English language that was used in the conduct of those proceedings," that he falsely insisted that he needed an interpreter when he did not, and consequently, that he obstructed justice within the meaning of § 3C1.1.

This court has said that the "district court may find from circumstantial evidence that the defendant engaged in a conscious and deliberate attempt to obstruct or impede the administration of justice." United States v. Greer, 158 F.3d 228, 241 (5th Cir. 1998). Thus, in light of the district court's express factual findings, and affording deference to the credibility determinations of the district court, see Harms, 442 F.3d at 378, we conclude that the district court did not clearly err in finding that Juarez-Duarte acted with the intent to willfully obstruct justice by falsely contending that he needed an interpreter.

However, in order to determine that the district court properly applied the two-level sentence enhancement provided under § 3C1.1 for obstruction of justice, the false information that Juarez-Duarte provided to the district court regarding his need for an interpreter must also have been material. U.S. SENTENCING GUIDELINES MANUAL § 3C1.1. The Guidelines define "material" information as that which, "if believed, would tend to influence or affect the issue under determination." Id. at cmt. n.6. To this end, the district court stated that "one of the consequences of [Juarez-Duarte's insistence on the use of an interpreter when he did not need one] was to raise an uncertainty in the [c]ourt's mind . . . as to whether there would be an issue raised as to the validity of his arraignment, his guilty plea, with the consequence that we had to redo that in an abundance of caution."

In an attempt to show a lack of materiality, Juarez-Duarte tries to distinguish this case from Greer—a case in which this court analogized to the

§ 3C1.1 commentary regarding the production of a false document and held that feigning mental incompetence in order to avoid trial is subject to the obstruction of justice enhancement, 158 F.3d at 234-38. He argues that in Greer, there was an abundance of scientific evidence to support the conclusion that the defendant acted to delay or avoid trial altogether, whereas here, the district court lacked such support for its conclusion that his statements, even if false, were intended to affect the proceeding by raising doubts about whether his guilty plea was knowing and voluntary for a future appeal. Juarez-Duarte's materiality argument is flawed. In Greer, this court was reviewing the district court's factual finding that the defendant had acted with the requisite intent to obstruct justice under § 3C1.1 rather than determining whether the content of the defendant's conduct was material. Consequently, Juarez-Duarte mischaracterizes this court's materiality analysis.

The relevant materiality inquiry under the Guidelines is whether the information supplied to the court, in this case Juarez-Duarte's false contention under oath at his sentencing hearing that he needed an interpreter, "if believed, would tend to influence or affect the issue under determination." U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 cmt. n.6. In United States v. Cabral-Castillo, the court sustained an obstruction enhancement for perjury absent explicit findings from below that the defendant's false testimony, which accused a federal agent of beating him, was material because "the trial judge also found, at least implicitly, that [the defendant] falsely accused [the agent] of having obtained his confession by coercive tactics." 35 F.3d 182, 187 (5th Cir. 1994). We explained further:

> Even though there was no explicit finding by either the trial or sentencing judge that this testimony was material, [the defendant's] testimony on this topic was obviously "material" in that it was clearly "designed to substantially affect the outcome of the case." The

> government's case against [the defendant] was significantly bolstered by [his] confession; had the jury believed [his] claim that his confession was other than voluntary and reliable, that certainly could have affected the outcome of the case against him.

Id.

In this case, the district court expressly found that "one of the consequences of" Juarez-Duarte's false contention under oath at his sentencing hearing that he needed an interpreter "was to raise an uncertainty in the [c]ourt's mind . . . as to whether there would be an issue raised as to the validity of his rearraignment, his guilty plea, with the consequence that we had to redo that in an abundance of caution." With this determination, the district court not only conveyed that information provided in this case, "if believed, would tend to influence or affect the issue under determination," but also indicated that Juarez-Duarte's false contention was in fact believed, at least to some extent, since it called into question whether the guilty plea was knowing and voluntary. Moreover, it did affect the issue under determination—what sentence the district court should impose based on that guilty plea—so much so that the district court felt compelled to set aside his guilty plea and rearraign him with the assistance of an interpreter. Even more obviously than in Cabral-Castillo, Juarez-Duarte's false contention that he needed an interpreter was obviously "material" in that it clearly "would tend to influence or affect the issue under determination," because it in fact did.

This court is not unsympathetic to the legitimate concern raised by Juarez-Duarte that imposing the obstruction enhancement on defendants who falsely assert the need for an interpreter might make other defendants hesitant to request an interpreter, a right protected by the Court Interpreters Act, 28 U.S.C. § 1827. However like in Greer, where we said that "applying the obstruction enhancement to defendants who willfully feign incompetency in order to avoid

trial and punishment does not unconstitutionally chill a defendant's right to seek a competency hearing," 158 F.3d at 237, we trust the district courts, in their discretion, to make sufficient factual findings of willful intent to obstruct justice, as well as sound credibility determinations regarding the legitimacy of the defendant's request for an interpreter, to prevent impermissible chilling.

Accordingly, the district court properly applied the two-level enhancement for obstruction of justice in this case.

## B. Acceptance of Responsibility

Generally, a defendant can receive a two or three-level reduction in his offense level under § 3E1.1 of the Guidelines for clearly demonstrating acceptance of responsibility for the offense. U.S. SENTENCING GUIDELINES MANUAL § 3E1.1. "We will affirm a sentencing court's decision not to award a reduction under [ ] § 3E1.1 unless it is 'without foundation,' a standard of review more deferential than the clearly erroneous standard." United States v. Anderson, 174 F.3d 515, 525 (5th Cir. 1999). Ordinarily, conduct that results in an enhancement for obstruction of justice under § 3C1.1 "indicates that the defendant has not accepted responsibility for his criminal conduct," except in "extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. n.4. In this case the PSR, expressly adopted by the district court, stated that notwithstanding Juarez-Duarte's "reasoning as to why an interpreter was used at his last two hearings, this case does not rise to the level of being an 'extraordinary case' in which both adjustments should apply." We cannot say that this finding is without foundation.

## C. Constitutional Challenge to 8 U.S.C. § 1326(b)(2)

Juarez-Duarte also argues that 8 U.S.C. § 1326(b)(2) is unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). Juarez-Duarte concedes that this argument is foreclosed by Almendarez-Torres v. United States, 523 U.S.

224, 228 (1998). Apprendi did not overrule Almendarez-Torres. See Apprendi, 530 U.S. at 489-90; United States v. Izaguirre-Flores, 405 F.3d 270, 277-78 (5th Cir. 2005). Therefore, "we are required to follow it 'unless and until the Supreme Court itself determines to overrule it.'" Izaguirre-Flores, 405 F.3d at 277-78 (citation omitted). Consequently, this argument has no merit.

D. Reasonableness of the Sentence

We review the district court's application of the sentencing guidelines de novo. United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005). Findings of fact are accepted unless clearly erroneous. United States v. Smith, 440 F.3d 704, 706 (5th Cir. 2006) (citations omitted). Ultimately, under United States v. Booker, 543 U.S. 220, 261 (2005), we are reviewing the sentence to ensure that it is reasonable. Smith, 440 F.3d at 706. If the district court imposes a sentence within a properly calculated guideline range, we presume that the district court considered all the necessary factors, and that the sentence is reasonable. United States v. Alonzo, 435 F.3d 551, 554 (5th Cir. 2006); United States v. Mares, 402 F.3d 511, 519-20 (5th Cir. 2005).

Because we have already determined that the district court properly calculated the sentencing guideline range, and Juarez-Duarte's eighty-seven month sentence is within that range, Juarez-Duarte must rebut the presumption of reasonableness. See Mares, 402 F.3d at 519-20. His only argument is based on the nature of his crime. Specifically, he asserts that the sentence is unreasonably long because illegal reentry into the United States after removal is no more than simple trespass. We were not impressed with that argument in United States v. Aguirre-Villa, 460 F.3d 681, 683 (5th Cir. 2006), nor are we persuaded by it in this case. Congress considers illegal reentry into the United States subsequent to a conviction for an aggravated felony an extremely serious offense punishable by up to twenty years in prison. In light of the presumption of reasonableness afforded sentences within the Guidelines range and this

congressional judgment, Juarez-Duarte's eighty-seven month sentence is not unreasonable.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Juarez-Duarte's sentence.