# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 9, 2020

Lyle W. Cayce
Clerk

No. 19-40498

United States of America,

*Plaintiff—Appellee*,

*versus*

John D. Leontaritis,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:18-CR-23-1

Before Higginbotham, Elrod, and Haynes, *Circuit Judges*.
Catharina Haynes, *Circuit Judge*:

John D. Leontaritis was charged with one count of conspiracy to possess with the intent to distribute and distribute 500 grams or more of a mixture containing methamphetamine and one count of conspiracy to commit money laundering. The jury found Leontaritis guilty on both counts. The jury also returned a special verdict finding beyond a reasonable doubt that the conspiracy involved 500 grams or more of a mixture containing methamphetamine. On the question of Leontaritis's accountability, the jury did not find that he was accountable for more than 50 grams. The district court, concluding that a preponderance of the evidence showed that it was

No. 19-40498

reasonably foreseeable that Leontaritis was responsible for 176 kilograms of methamphetamine, sentenced Leontaritis to concurrent terms of 240 months of imprisonment, to be followed by a total of three years of supervised release.

Leontaritis appeals, arguing that the district court erred in finding that the amount of drugs reasonably foreseeable to him within the scope of the conspiracy was 176 kilograms. Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), he contends that the district court was bound by the jury's finding that he was accountable for less than 50 grams of methamphetamine and that the district court's alleged disregard of this finding violated the Fifth and Sixth Amendments. We review Leontaritis's properly preserved constitutional challenge to his sentence de novo. *See United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014).

The pertinent jury question and answer are as follows:

You must next determine the quantity of methamphetamine for which the defendant was accountable. Indicate below your unanimous finding beyond a reasonable doubt of the quantity of methamphetamine, if any, attributable to the defendant. The defendant is accountable only for the quantity of methamphetamine with which he was directly involved and all reasonably foreseeable quantities of methamphetamine within the scope of the conspiracy reasonably foreseeable to him.

_____ 500 grams or more of a mixture or substance containing detectable amount of methamphetamine.

_____ 50 grams or more but less than 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

__X__ Less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine.

The general instructions required proof by the Government beyond a reasonable doubt. Leontaritis argues that the jury found beyond a reasonable doubt that he was accountable for less than 50 grams. We read it the other way: that the Government failed to prove 50 or more grams beyond a reasonable doubt. In so doing, our opinion is consistent with the vast majority of circuits that have considered this issue. *See United States v. Lopez-Esmurria*, 714 F. App'x 125, 127 (3d Cir. 2017) (unpublished); *United States v. Webb*, 545 F.3d 673, 678 (8th Cir. 2008); *United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006); *United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir. 2005); *United States v. Goodine*, 326 F.3d 26, 33–34 (1st Cir. 2003); *United States v. Smith*, 308 F.3d 726, 744–45 (7th Cir. 2002). Only the Ninth Circuit came out the way Leontaritis requests. *United States v. Pimentel-Lopez*, 859 F.3d 1134, 1140 (9th Cir. 2017).

But, either way, Leontaritis's argument fails to recognize the difference between *Apprendi* and *Alleyne*, on the one hand, and *United States v. Booker*, 543 U.S. 220 (2005), on the other hand. The former cases deal with statutory minimums and maximums. *See United States v. Stanford*, 805 F.3d 557, 570 (5th Cir. 2015). As to those findings, the jury verdict is binding. *Apprendi*, 530 U.S. at 490; *Alleyne*, 570 U.S. at 103. On the other hand, here, the question relates to the calculation and application of the Sentencing Guidelines, which is within the judge's duty, not the jury's. *Booker*, 543 U.S. at 257. The Supreme Court made this clear in *United States v. Watts*, which it has not overruled. 519 U.S. 148, 156–57 (1997) (holding that a district judge may rely on conduct proven by a preponderance of the evidence even if the jury did not find the same conduct proven beyond a reasonable doubt at trial). Indeed, we have consistently explained:

> [T[he *Alleyne* opinion did not imply that the traditional fact-finding on relevant conduct, to the extent it increases the

> discretionary sentencing range for a district judge under the Guidelines, must now be made by jurors. . . . The Court did not suggest that the setting of Sentencing Guidelines ranges in a PSR,   which structure but do not control district judge discretion, were subject to the same requirement.

*United States v. Hinojosa*, 749 F.3d 407, 412–13 (5th Cir. 2014); *see also Stanford*, 805 F.3d at 570 (holding that "[n]either *Apprendi* nor *Alleyne* applies to sentencing guidelines" and that a district court may "adjudge[] a sentence within the statutorily authorized range"); *United States v. Romans*, 823 F.3d 299, 316–17 (5th Cir. 2016) (holding the same).[1]

Even if the charge in this case suggested some intent to bind the district judge's sentencing discretion, mistakes in jury charges do not change the way a jury's role is assessed. *See Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) (holding that where the jury question erroneously added an extra element to a charge, the analysis of sufficiency of the evidence should not include that added element). "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *Booker*, 543 U.S. at 233. Indeed, because mandatory guidelines impinged on the judge's role, *Booker* severed that part of the Guidelines statute. *Id.* at 246. We are therefore left with a clean division of labor: absent waiver of a jury trial, statutory findings (whether the defendant is guilty or not guilty and whether his conduct meets the test for a statutory minimum or maximum) are for jurors to decide, while sentencing within the statutory minimums and maximums following a guilty verdict and applying the

---

[1] In addition to conflicting with the law of six other circuits, the Ninth Circuit's ruling in *Pimentel-Lopez* is unpersuasive for the additional reason that it is inconsistent with our case law. We are bound by our precedent unless the Supreme Court or our en banc court has changed the relevant law. *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

No. 19-40498

Sentencing Guidelines is for the district judge to decide.[2]  Accordingly, we conclude that the district court did not err in making its decision about drug quantity for purposes of determining the applicable Sentencing Guidelines range.

Leontaritis also challenges the district court's application of a two-level enhancement under § 3B1.3 of the Sentencing Guidelines based on a finding that he abused a position of trust or used a special skill to significantly facilitate the commission or concealment of the offense.  The district court found that he possessed a state-issued license for his car dealership and that he used the license to facilitate and conceal the offense.  Leontaritis argues that he held no position of trust.  He also asserts that the evidence at trial did not support the district court's conclusion that a co-conspirator purchased multiple cars from Leontaritis.  The Government responds that, even if the court erred in this regard, the error is harmless.

We review the district court's interpretation or application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).  A finding of fact is not clearly erroneous if it is plausible in light of the entire record.  *Id.*

"A procedural error during sentencing is harmless if the error did not affect the district court's selection of the sentence imposed." *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009) (internal quotation marks and citations omitted).  An error in calculating the Sentencing Guidelines is harmless if the district court considered the correct advisory guidelines range in its analysis and stated that it would impose the same

---

[2] We note one exception to this clear division of labor, that is, a sentencing court may "increase[] the penalty for a crime beyond the prescribed statutory maximum" upon finding that the defendant had a prior conviction. *Apprendi*, 530 U.S. at 490.

sentence even if that range applied. *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012). Even when a district court fails to consider the correct sentencing guideline range, an error may be harmless "if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 713–14 (5th Cir. 2010).

At sentencing, the court gave extensive reasons as to why it imposed a sentence of 20 years. The court stated that it would have imposed the same sentence under the factors of 18 U.S.C. § 3553(a) even if the guidelines were incorrectly calculated and specifically cited the need for the sentence imposed to serve as just punishment, to promote respect for the law, and to deter future criminal acts. Additionally, the court imposed the statutory maximum sentence on each count, opting not to have the sentences run consecutively to each other, indicating that it had a particular sentence in mind without reference to the guidelines range. Because the district court's statements show that the sentence was not based on the guidelines range and that the district court would have imposed the same sentence without the alleged error for the same reasons, any error in imposing the two-level enhancement for abuse of position of trust is harmless. *Cf. id.* at 719.

Finally, Leontaritis contends that the district court erred in failing to award him a two-level reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines. He contends that such a reduction was warranted because he admitted to one of the charges against him.

We "will affirm a sentencing court's decision not to award a reduction . . . unless it is without foundation, a standard of review more deferential than the clearly erroneous standard." *United States v. Juarez-Duarte*, 513 F.3d 204, 211 (5th Cir. 2008) (per curiam) (internal quotation marks and citation

omitted).  The defendant has the burden of proving that the reduction is warranted.  *United States v. Medina-Anicacio*, 325 F.3d 638, 647 (5th Cir. 2003).  By his own admission, Leontaritis disputed his conduct on the drug conspiracy conviction and on aspects of his money laundering conspiracy conviction.  The record shows that he repeatedly argued that he was not involved in a drug conspiracy and that he lacked the intent to conceal drug proceeds.  Thus, he contested his factual guilt.  The district court's refusal to award a reduction for acceptance of responsibility is not without foundation.  *See Juarez-Duarte*, 513 F.3d at 211.

Accordingly, the judgment of the district court is AFFIRMED.

No. 19-40498

Jennifer Walker Elrod, *Circuit Judge*, concurring in part[1] and dissenting in part:

This case boils down to what question the special interrogatory asked the jury. Did it ask the jury to determine, beyond a reasonable doubt, the actual amount of methamphetamine for which Leontaritis was accountable? Or did it ask the jury to decide whether the government had met its burden with respect to different weight ranges? Because the plain language of the special interrogatory clearly asks the former question, I would reverse and remand for resentencing consistent with the jury's special finding.

## I.   I.

In response to a special interrogatory, the jury found that John Leontaritis was accountable for less than 50 grams of methamphetamine mixture. Nevertheless, at sentencing the judge found Leontaritis accountable for 176 kilograms of methamphetamine mixture: 3,520 times greater than the upper limit of the jury's explicit finding. These contradictory factual findings cannot be reconciled on a notion of the "division of labor" between the judge and the jury. Nor can the jury's special finding plausibly be read as simply determining that the government did not reach its burden as to the higher amounts.

The special interrogatory instructed the jury to "[i]ndicate below [its] unanimous finding beyond a reasonable doubt of the quantity of methamphetamine, if any, attributable to the defendant." In response the jury marked, "Less than 50 grams of a mixture or substance containing a

---

[1] I agree with the majority opinion that the district court did not clearly err in applying the public-trust enhancement and that it was not without foundation in declining to award an acceptance-of-responsibility reduction. I concur in those portions of the majority opinion.

No. 19-40498

detectable amount of methamphetamine." The interrogatory and response plainly give the jury's affirmative finding that Leontaritis was accountable for less than 50 grams of methamphetamine mixture.

The only way to read the special interrogatory differently is by actually changing the words of the interrogatory. That is exactly what the government did. Twice in its brief, the government claims that "[t]he jury unanimously found beyond a reasonable doubt that Leontaritis was responsible for *up to* 50 grams." The government's change of "less than" to "up to" fits its theory that the jury did not weigh in on amounts more than 50 grams—a position otherwise untenable since "less than" is plainly inconsistent with "more than." It does not, however, fit the actual words of the special interrogatory.

The government and the majority opinion rely on a series of cases to support their a-textual interpretation of the special interrogatory. Neither the majority opinion nor the government's brief engage with the language in the special interrogatories at issue in those cases. Nor, in fact, do the cases themselves. *See United States v. Lopez-Esmurria*, 714 F. App'x 125, 127 (3d Cir. 2017); *United States v. Webb*, 545 F.3d 673, 677–78 (8th Cir. 2008); *United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006); *United States v. Magallanez*, 408 F.3d 672, 683–85 (10th Cir. 2005); *United States v. Goodine*, 326 F.3d 26, 32–34 (1st Cir. 2003); *United States v. Picanso*, 333 F.3d 21, 25–26 (1st Cir. 2003); *United States v. Smith*, 308 F.3d 726, 743–45 (7th Cir. 2002).[2]

---

[2] I reviewed the special interrogatories at issue in each of these cases, except for *Goodine*, *Picanso*, and *Smith*. In those three cases, retrieval of the actual verdict form was made difficult by a lack of electronic records in the district courts for the relevant years. The dockets, however, show that the verdict forms for *Goodine*, *Picanso*, and *Smith* are available, respectively, at Docket No. 64, *United States v. Goodine*, No. 2:01-cr-00025-

No. 19-40498

The language in the special interrogatories in those cases can be generally categorized into two types: (i) burden-of-proof language and (ii) jury-finding language. On the burden-of-proof side lies *Florez*, in which the special interrogatory directs the jury to "state the maximum quantity of heroin that the prosecution has proven beyond a reasonable doubt that the importation involved. 10 kilograms or more ____ 3 kilograms or more ____ 1 kilogram or more ____ 100 grams or more ____." Verdict Form, *United States v. Florez*, No. 04-CR-80 (E.D. N.Y. May 12, 2005).[3]

Similarly, the special interrogatory in *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004)—analyzed by Leontaritis in his reply and at oral argument—contains burden-of-proof language because it asks the jury to find the defendant guilty or not-guilty as to different amounts:

> Conspiracy to Distribute Marijuana:
>
> ____ Guilty of Conspiracy to Distribute 100 kilograms or more of marijuana.
>
> ____ Guilty of Conspiracy to Distribute 50 to 100 kilograms of marijuana.
>
> _✓_ Guilty of Conspiracy to Distribute less than 50 kilograms of marijuana.
>
> ____ Not guilty.

---

DBH-2 (D. Me. Aug. 01, 2002); Docket Nos. 117–18, *United States v. Picanso*, No. 1:99-CR-10343-EFH (D. Mass. May 02, 2002) (Nos. 02-1551, 02-2013); and Docket Nos. 110–16, *United States v. Smith*, No. 99-CR-50022 (N.D. Ill. Aug. 08, 2000). Each of these three cases pre-dates *United States v. Booker*, 543 U.S. 220 (2005).

[3] For consistency, I refer to each of the documents containing general and special interrogatories and jury responses as a "verdict form."

Verdict Form, *United States v. Pineiro*, No 2:02-CR-20024, 2007 WL 496403 (W.D. La. Apr. 07, 2007).  Both the *Florez* and *Pineiro* special interrogatories clearly ask the jury to decide whether the prosecution had met its burden of proof rather than decide for itself the actual amount at issue in the case.

The special interrogatory in this case, which instructs the jury to "[i]ndicate below [its] unanimous finding beyond a reasonable doubt of the quantity of methamphetamine, if any, attributable to the defendant," is markedly different.  The special interrogatory asks the jury to make its own affirmative finding as to the precise amount of methamphetamine mixture attributable to Leontaritis.  Thus, this special interrogatory falls on the jury-finding side of the ledger, alongside the special interrogatories in *Webb*, *Magallanez*, and *Lopez-Esmurria*.  The *Webb* special interrogatory includes the following language:

> We, the jury, find beyond a reasonable doubt, that the quantity of cocaine base (crack cocaine) involved in the conspiracy and that was either directly attributable to defendant Geno Webb or reasonably foreseeable to him was:
>
> ＿＿ more than 50 grams
>
> ✓ more than 5 grams but less than 50 grams
>
> ＿＿ less than 5 grams.

Verdict Form at 2, *United States v. Rey et al.*, No. 3:06-CR-00573-JAJ-SBJ, 2008 WL 244379 (S.D. Iowa Jan. 28, 2008).

Similarly, the *Magallanez* verdict form contains the following special interrogatory and response:

> We, the jury, duly empaneled, find beyond a reasonable doubt as to the amount of a mixture containing methamphetamine distributed or possessed with the intent to distribute in the conspiracy charged in the Indictment: (check only one)

No. 19-40498

( ) That the amount of a mixture containing methamphetamine distributed or possessed with intent to distribute exceeded 500 grams.

(✓) That the amount of a mixture containing methamphetamine distributed or possessed with intent to distribute was more than 50 grams, but less than 500 grams.

( ) That the amount of a mixture containing methamphetamine distributed or possessed with intent to distribute was less than 50 grams.

Verdict Form at 1–2, *United States v. Magallanez*, No. 2:02-CR-125-NDF-7 (D. Wyo. Feb. 12, 2004).

The *Lopez-Esmurria* special interrogatory contains hybrid language because it instructs the jury to find the specific quantity of cocaine hydrochloride beyond a reasonable doubt" while including "Not guilty as it relates to cocaine hydrochloride" as one of the quantity responses:

On the charge outlined in Count One, we find that Defendant Mr. Lopez-Esmurria conspired to knowingly and intentionally distribute and possess with intent to distribute the following amount of cocaine hydrochloride (check only one):

Five kilograms and more: ____

Less than five kilograms, but equal to or more than five hundred grams: ____

Any weight less than 500 grams: __✓__

Not guilty as it relates to cocaine hydrochloride: ____.

Verdict at 1–2, *United States v. Lopez-Esmurria*, No. 1:11-CR-00230-YK, 2014 WL 12672442, (M.D. Pa. Oct. 6, 2014). The verdict form uses similar language for the heroin-related counts and the counts against other defendants. *Id.* at 2–8.

None of the circuit cases, however, discusses the language in the special interrogatory at issue.  The only case cited in the briefs or the majority opinion that actually addresses the language of the special interrogatory is *United States v. Pimentel-Lopez*, 859 F.3d 1134, 1140, 1142–43 (9th Cir. 2016).  The special interrogatory used in *Pimentel-Lopez* reads:

> Having found Jesus Pimentel-Lopez guilty of the charge in Count I of the indictment, we unanimously find beyond a reasonable doubt the amount of a substance containing a detectable amount of methamphetamine attributable to Jesus Pimentel-Lopez to be:
>
> __X__ Less than 50 grams of a substance containing a detectable amount of methamphetamine.
>
> ____ 50 grams or more, but less than 500 grams, of a substance containing a detectable amount of methamphetamine.
>
> ____ 500 grams or more of a substance containing a detectable amount of methamphetamine.

Verdict Form at 1–2, *United States v. Pimentel-Lopez*, No. 2:13-CR-00024-SEH-1 (D. Mont. Sept. 30, 2014); *see also Pimentel-Lopez*, 859 F.3d at 1139.  Similar wording was used for Count II.  *See* Verdict Form at 3.

*Pimentel-Lopez* rejected the government's argument that the jury verdict in response to the special interrogatory merely constituted an acquittal on amounts greater than 50 grams, because the special interrogatory was not capable of that construction.  859 F.3d at 1141–42.  Rather, the jury-finding language in the special interrogatory could only be read as requesting an affirmative finding by the jury of the actual amount of methamphetamine mixture attributable to the defendant.  *Id.* at 1141.  So too here.  The majority opinion's attempts to re-write the special interrogatory in this case in terms of burden of proof are unavailing.  We must take the verdict form as we find

it, and the jury-finding language in this special interrogatory and response constitutes an affirmative finding by the jury.

The upshot is that the majority opinion joins what I believe is the wrong side of a deeply entrenched circuit split, which has developed without careful parsing of the actual words of the relevant special interrogatories. On one side of the split lies the Ninth Circuit, which explicitly discussed the language of the relevant special interrogatory in its opinion. *See Pimentel-Lopez*, 859 F.3d at 1139, 1141–42. On the other side lie the Third, Eighth, Tenth, and, now, Fifth Circuits. *See Lopez-Esmurria*, 714 F. App'x at 127 (citing *United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014)); *Webb*, 545 F.3d at 667–78; *Magallanez*, 408 F.3d at 683–85. What is most disappointing about the majority opinion is that it, unlike the Third, Eighth, and Tenth Circuit opinions, does address and quote the language of the special interrogatory. Nevertheless, it ignores the actual words of the special interrogatory.

## II.    II.

The majority opinion's approach leads it to a more fundamental error: its conclusion that the judge can contradict the jury's factual findings at sentencing. The majority opinion cites to *United States v. Booker*, 543 U.S. 220 (2005) to frame this case in terms of a "clean division of labor" between the judge and the jury; *i.e.*, juries assess guilt and judges assign punishment. The problem posed by this case, however, goes beyond the question settled in *Booker*. While *Booker* addressed whether the judge or the jury should decide the facts of the "real conduct" underlying a statutory offense for purposes of sentencing, *Booker*, 543 U.S. at 250–51, this case asks whether the judge can contradict the jury once it has already found a portion of those facts.

The majority opinion would have *Booker* do too much.  The majority opinion claims that "because mandatory guidelines impinged on the judge's role [in sentencing], *Booker* severed that part of the Guidelines statute." That is simply not accurate.  The first part of the *Booker* opinion found the guidelines, as written, unconstitutional because they impinged on the Sixth Amendment right to a jury trial.  *Booker*, 543 U.S. at 233–34; 244 (discussing *Blakely v. Washington*, 542 U.S. 296, 299, 313, 325 (2004)).  The problem was an insufficient role of the jury when the guidelines were mandatory.  The second part of the *Booker* opinion fixed the constitutional problem by excising the provision in the Sentencing Act which made the guidelines mandatory. *Id.* at 265.  A lack of judicial discretion was not the problem; rather, the addition of judicial discretion was the easiest remedy given the likely intent of Congress had it understood the impact of the Sixth Amendment's jury-trial right on sentencing.  *Id.* at 246, 265.

*Booker* does not settle all questions regarding the relationship of the judge and the jury at sentencing, and it does not address the question presented by this case: can a district court's sentence contradict an affirmative finding by the jury?  There is certainly reason to be cautious in exploring this question, and I share Judge Graber's concern that the *Pimentel-Lopez* opinion "suggests that *any* jury finding as to drug weight that sets an 'upper boundary' precludes a sentencing judge from finding a drug weight above that boundary by a preponderance of the evidence." *Pimentel-Lopez*, 859 F.3d at 1139 (Graber, J., dissenting from denial of rehearing en banc) (emphasis in original).  That issue is not presented here, however, where the special interrogatory and response provide an answer to the question that does not depend on a superiority determination between judge and jury.

In my view, if the jury has affirmatively found a specific fact, rather than having simply decided that the government did not meet its burden of

No. 19-40498

proof on related facts, then the court may not make a finding inconsistent with or impose a sentence beyond a limit set by the jury's finding. The court is at all times free to structure its special interrogatory like the interrogatories in *United States v. Pineiro* or *United States v. Florez*. Verdict Form, *United States v. Pineiro*, No 2:02-CR-20024, 2007 WL 496403 (W.D. La. Apr. 07, 2007); Verdict Form, *United States v. Florez*, No. 04-CR-80 (E.D. N.Y. May 12, 2005). Here, however, the government requested this special interrogatory, and the court adopted it and gave it to the jury. The jury's findings preclude the sentence that was given.

　　　　I respectfully dissent.