# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 8, 2022

Lyle W. Cayce
Clerk

No. 21-40253

United States of America,

*Plaintiff—Appellee*,

*versus*

Tyton Hester,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:18-CR-85-1

Before Stewart, Clement, and Elrod, *Circuit Judges*.

Per Curiam:[*]

Tyton Hester was one of several defendants charged in a multi-agency effort to prevent the movement of illegal narcotics from Mexico. After a first trial resulted in a hung jury, he was convicted following a second trial on counts for drug conspiracy, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm. Based on his criminal

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-40253

history, the district court sentenced Hester within the guidelines range to life imprisonment on count one and 120 months on count three, to be served concurrently, and 60 months on count two, to be served consecutively.

On appeal, Hester disputes the sufficiency of the evidence on all three counts, argues that the evidence seized from two locations should have been suppressed, and challenges five different guidelines issues. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The parties dispute Hester's role in the broader drug conspiracy but agree on many facts related to his involvement. Namely, Hester bought methamphetamine from Roel Astran in Dallas that he would sell with others at his auto shop in Sherman, Mobile MechanicXX. Hester appears to have been Astran's only customer. Astran received methamphetamine from Jesus Ordaz and Christian and Daniel Mendoza. Ordaz received methamphetamine from the Mendozas and Jesus Davila Hernandez. Davila had primary sources of supply in Mexico.

According to the Government, Hester would drive to Dallas, pick up Astran at a motel or on the street, and head to a stash house. After receiving money from Hester, Astran would go inside, buy drugs, and provide them to Hester, who would bring them back to Mobile MechanicXX or to the apartment that he shared with his common-law wife. At Mobile MechanicXX, the drugs were reallocated for further distribution and placed in safes to sell. Footage seized from surveillance cameras that Hester had an associate install on the premises shows Hester and others breaking drugs down, selling bags, recording transactions in ledgers, and inserting and removing drugs and cash from the safes. The Government contends that these individuals were Hester's "workers," but Hester maintains that "[e]ach acted effectively as independent contractors, not subordinates."

2

No. 21-40253

The Sherman Police Department had received information indicating that Hester was a drug dealer. Surveillance it carried out at Mobile MechanicXX revealed come-and-go traffic, with people not staying long and conducting transactions in the parking lot and through car windows. Pursuant to warrants approved by a state magistrate, officers searched Hester's auto shop and apartment. At Mobile MechanicXX, they found, among other items, a lockbox with several bags of methamphetamine totaling 35.65 grams, a shotgun engraved with Hester's initials, GPS trackers, drug ledgers, ammunition, a methamphetamine pipe, a marijuana pipe, rifle and handgun cartridges, digital scales, safes, and the DVR from the security cameras that Hester had installed. Meanwhile, at his apartment, they found a loaded semi-automatic pistol, a semi-automatic handgun, drug ledgers, digital scales, body armor, and a bag containing 343.6 grams of methamphetamine.

A grand jury charged Hester and seven co-defendants in a second superseding indictment with conspiracy to possess with the intent to distribute methamphetamine under 21 U.S.C. § 846 (count one). It also charged Hester with possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c) (count two) and felon in possession of a firearm under 18 U.S.C. § 922(g)(1) (count three). Hester filed a motion to suppress evidence retrieved during the search of his apartment, alleging that the officers lacked probable cause. The district court denied the motion because it was untimely and, in any case, the warrant would have been supported by probable cause and fallen under the good faith exception. Hester's first trial lasted approximately two weeks and resulted in a conviction on count three and a hung jury on counts one and two. His second trial lasted six days and resulted in a conviction on the two remaining counts. Notably, in the second trial, the Government introduced the video

No. 21-40253

footage of illicit activity in Hester's auto shop that was captured by his own surveillance cameras.

Following his conviction, the probation office prepared a pre-sentence report ("PSR"). Hester's base offense level, 34, was increased through a series of sentencing enhancements and ended up at the guidelines maximum, 43. Since his criminal history category was V, this resulted in a guidelines imprisonment range of life imprisonment. The district court ultimately sentenced Hester to life imprisonment on count one and 120 months on count three, to be served concurrently, and 60 months on count two, to be served consecutively.

Hester timely appealed, (1) disputing the sufficiency of the evidence on all three counts, (2) arguing that the evidence seized from both his apartment and auto shop should have been suppressed, and (3) challenging five different guidelines issues: the amount of drugs attributed to Hester in calculating his base offense level and the sentencing enhancements for obstruction of justice under U.S.S.G. § 3C1.1, importation under U.S.S.G. § 2D1.1(b)(5), maintaining a premises for distribution under U.S.S.G. § 2D1.1(b)(12), and serving as an organizer of a drug distribution enterprise under U.S.S.G. § 3B1.1(a).

## II. DISCUSSION
### A. *Sufficiency of the Evidence*

This court gives "substantial deference to the jury verdict," *United States v. Delgado*, 672 F.3d 320, 330 (5th Cir. 2012) (en banc), viewing all evidence and making all reasonable inferences in the light most favorable to it. *United States v. Rodriguez*, 260 F.3d 416, 423 (5th Cir. 2001). Thus, we affirm the verdict unless no rational jury could have found guilt beyond a reasonable doubt. *United States v. Beacham*, 774 F.3d 267, 272 (5th Cir. 2014).

On appeal, Hester argues that the evidence was insufficient to support his convictions for the drug and firearms counts. However, he "faces an imposing standard of review" that he cannot overcome. *United States v. Parekh*, 926 F.2d 402, 405 (5th Cir. 1991).

### i.   *Count 1: Conspiracy to Possess with Intent to Distribute*

In order to convict a defendant of conspiracy to possess with the intent to distribute under 21 U.S.C. § 846, there must be "proof of (1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy." *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003).

According to Hester, the evidence introduced is insufficient to satisfy each element because the Government relies heavily on "speculation, conjecture[,] and unreliable witnesses." He emphasizes that the officers found no drugs, guns, or "evidence of high living" on him when he was arrested; that cooperating and testifying defendants had incentives to exaggerate and fabricate against him; that he does not speak Spanish and never had conversations with anyone in Mexico; and that the first jury hung on this charge. However, such facts do not indicate that Hester did not satisfy the elements of conspiracy based on his dealings in Sherman. The Government produced ample evidence that could support his conviction, including copious testimony reflecting that Hester agreed with two or more persons to distribute methamphetamine, surveillance footage showing him participating with two or more persons to distribute methamphetamine, and the fruits of the searches of his auto shop and apartment. He has failed to demonstrate that no rational jury could have found guilt beyond a reasonable doubt.

*ii.    Count 2: Possession of a Firearm in Furtherance of Drug Trafficking*

A conviction for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c) requires both (1) the commission of a drug offense and (2) the defendant's knowing possession of a firearm in furtherance of that offense. *See United States v. Montes*, 602 F.3d 381, 386 (5th Cir. 2010).

Hester contends that his conviction rests on the existence of three weapons and that there is no evidence that he used them to protect drugs or proceeds. Specifically, he argues that the shotgun found at Mobile MechanicXX was simply stored there as a means of protecting the auto shop from intruders, and that the two guns found in his apartment were weapons for his wife's personal protection. However, the fact that there were drug ledgers found by the loaded pistol in his home office undercuts his defense, as does the surveillance footage capturing Hester at Mobile MechanicXX in possession of one of the weapons his wife ostensibly used for her own personal protection. Hester's wife and associates also testified that these were his weapons. In other words, viewing the evidence in the light most favorable to the jury verdict, a reasonable jury could determine that Hester possessed a firearm in furtherance of his drug conspiracy offense.

*iii.    Count 3: Felon in Possession of a Firearm*

A conviction for felon in possession of a firearm under 18 U.S.C. § 922(g)(1) requires that "(1) the defendant was previously convicted of a felony, (2) the defendant knowingly possessed a firearm, and (3) the firearm traveled in or affected interstate commerce." *United States v. Huntsberry*, 956 F.3d 270, 279 (5th Cir. 2020).

Hester lists an array of reasons that the evidence is insufficient to satisfy the essential elements of this charge, including that he did not have a weapon on him when he was arrested, others had access to Mobile

No. 21-40253

MechanicXX where the shotgun was found, and none of his co-defendants testified that he took a weapon for drug purchases or used one for enforcement of sales. Once again, it is unclear how these facts undermine his felon in possession conviction. The parties stipulated at trial that Hester was a felon and knew of his status as a felon before the date alleged in the relevant indictment, and the Government presented evidence that all three firearms had traveled in or affected interstate commerce. That Hester did not have a firearm on him when he was arrested, others had access to Mobile MechanicXX where the shotgun was found, and none of his co-defendants testified that he took or used a firearm for purchases or sales, among other facts Hester raises, do not demonstrate that no rational jury could have found guilt beyond a reasonable doubt.

In sum, the Government provided sufficient physical, video, documentary, and testimonial evidence to support Hester's convictions on all three counts.

## B. *Suppression of the Evidence*

In assessing a denial of a motion to suppress, this court reviews factual findings for clear error and conclusions of law de novo. *United States v. Burgos-Coronado*, 970 F.3d 613, 618 (5th Cir. 2020). Viewing the evidence in the light most favorable to the prevailing party below, we affirm the district court's ruling "if there is any reasonable view of the evidence to support it." *United States v. Freeman*, 914 F.3d 337, 342 (5th Cir. 2019) (quoting *United States v. Ortiz*, 781 F.3d 221, 226 (5th Cir. 2015)).

### i.  *Search of Hester's Apartment*

According to Hester, the state court violated his Fourth Amendment rights by authorizing the search of his apartment where two of three firearms were found. He argues that the affidavit supporting the search of his apartment relied heavily on information regarding surveillance of his auto shop,

and that the only evidence supporting the search of the apartment specifically derived from an informant whose information was stale.[1] The officers were allegedly eager to search his apartment and lacked probable cause to do so, and the good faith exception allegedly does not apply because of the officer's misrepresentations of current information regarding the apartment.

As Hester did not directly challenge the untimeliness of his motion to suppress, we need not consider it on appeal. *United States v. Seymour*, 101 F. App'x 967, 968 (5th Cir. 2004) (per curiam) (citing *Yohey v. Collins*, 985 F.2d 222, 224 (5th Cir. 1993)). However, we note the district court correctly observed that a reasonable officer could have believed that there was probable cause to support the affidavit and subsequent warrant in light of the ongoing nature of the suspected drug activity, the direct testimony from a witness who had consistently been inside Hester's home, and the supporting investigation by law enforcement. Moreover, it does not appear that probable cause was so lacking as to "render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). Thus, the district court took a reasonable view of the evidence in denying the motion to suppress evidence obtained from Hester's apartment.

---

[1] Hester also observes that, "[o]ddly, it appears that the district court denied [his] motion to suppress without reading the two warrants or two affidavits" and that "[a] [c]ourt of [a]ppeals should not defer to a district court" in this circumstance. The Government counters that Hester's complaint derives from his own failure to attach them to his motion when, as the movant, he bore the burden of showing that the searches challenged were unconstitutional. The Government recited large swaths of the affidavit before the district court, and the district court in turn discussed the affidavit and quoted from it. In any event, this court has since granted a motion to supplement the record with the warrant for the apartment search and associated affidavit.

### ii.    *Search of Hester's Auto Shop*

Hester concedes that his challenge to the search of Mobile MechanicXX "was not preserved at trial" and "[t]he plain error standard applies." To prevail on plain error review, a defendant "must show that (1) the district court erred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) this court should exercise its discretion to correct the error because 'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Lewis*, 796 F.3d 543, 546 (5th Cir. 2013) (quoting *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc)). However, Hester does not explain how he satisfied each of the four plain error prongs. According to Hester, if this court grants the motion to supplement the record with the relevant warrant and affidavit, it will see that the evidence listed did not establish probable cause. He makes the same arguments that he made in the context of the apartment search regarding the staleness of the evidence.

Our court denied Hester's attempt to supplement the record with the search warrant and supporting affidavit for the search of his auto shop because those documents were not before the district court. Thus, this claim is unreviewable and must fail.

In sum, the district court did not err by declining to suppress evidence obtained from the searches of Hester's apartment and auto shop.

### C.  *Guidelines Challenges*

This court reviews the district court's drug-quantity calculation for clear error. *United States v. Eustice*, 952 F.3d 686, 690 (5th Cir. 2020). Meanwhile, this court "review[s] a district court's interpretation or application of the [g]uidelines de novo and its factual findings for clear error." *United States v. Conner*, 537 F.3d 480, 489 (5th Cir. 2008). "There is no clear error if the

district court's finding is plausible in light of the record as a whole." *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (per curiam).

Hester makes five different challenges to the district court's application of the sentencing guidelines, each of which will be taken up in turn.

### i.   *Base Offense Level*

A district court may estimate drug quantity in calculating what is attributable to a defendant for sentencing purposes. *See United States v. Lee*, 966 F.3d 310, 326–27 (5th Cir. 2020). However, the PSR must have a factual basis for the attribution of drugs to a defendant. *See United States v. Valles*, 484 F.3d 745, 759 (5th Cir. 2007) (per curiam). "In a drug-trafficking case, relevant conduct may include all acts and omissions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Barfield*, 941 F.3d 757, 762 (5th Cir. 2019) (quoting U.S.S.G. § 1B1.3).

According to Hester, there was no factual basis for the attribution of his co-defendants' drugs to him. In support of this assertion, he makes several points that he has made elsewhere regarding the co-defendants' lack of credibility and incentives to fabricate about his role in the conspiracy, as well as the difficulties in connecting their drug dealing to his own. However, as the Government observes, Hester presented no evidence to suggest that the district court "clearly erred" in adopting its findings. The narcotics attributed to him are all of those seized in the searches of his apartment and auto shop, as well as some of those seized from co-defendants he supplied. Their drugs were "part of the same course of conduct or common scheme or plan as the offense of conviction," as required by the guidelines. The Government convincingly argues that over twice as many drugs could have been attributed to Hester had the probation office included certain testimony and

other searches in its calculation, so the district court's reliance on the more conservative calculation does not amount to clear error.

### ii.    Obstruction of Justice Enhancement

Under U.S.S.G. § 3C1.1, the district court can apply a two-level enhancement for obstruction of justice if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede," investigation into his offense.

According to Hester, this court should hold that the paucity of evidence was insufficient to attribute to him two anonymous handwritten notes and a handwritten letter, which contained warnings like "IF YOU ARE TALKING YOU AIN'T WALKIN'." He explains that the PSR merely "assumed" that he must have written the notes and letter, and that in any case there was "not an attempt to impede justice." However, the Government directs us to specific lines that match specific facts demonstrating that only Hester could be the author. Notably, it underscores that one of the notes addressed Hester's associate Amy Lashley by name and stated that "I saw the video that you made. I got your statement on deck" when Lashley (and only Lashley) had secretly recorded a video of a conversation between herself and Hester in cooperation with investigators. Moreover, lines such as "nothing good ever comes out of working with or helping the Feds!!!" and "stick to the script no matter what" undoubtedly reflect an attempt to impede justice. Thus, the district court did not clearly err, as its application of the enhancement was plausible considering the record.

### iii.    Importation Enhancement

Under U.S.S.G. § 2D1.1(b)(5), the district court can apply a two-level enhancement for importation when the charged offense involves "the importation of amphetamine or methamphetamine[.]"

According to Hester, the district court failed to establish that Hester knew the methamphetamine was imported. However, he acknowledges that

No. 21-40253

he is aware of Fifth Circuit caselaw that indicates this enhancement applies when the offense involved the importation of methamphetamine "even if the defendant did not know that the methamphetamine was imported." *United States v. Serfass*, 684 F.3d 548, 554 (5th Cir. 2012). The record establishes that Hester's methamphetamine source was Astran, Astran received methamphetamine from Davila, and Davila's primary sources of supply were in Mexico. Because *Serfass* is binding, Hester's argument is foreclosed.

### iv.   Premises Enhancement

Under U.S.S.G § 2D1.1(b)(12), the district court can apply a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance[.]"

Hester asserts that the evidence presented was insufficient to support the application of the premises enhancement. Specifically, he argues that the videos taken from his security cameras are inconclusive and "[a]t best . . . show[] only incidental drug sales at the shop." But multiple corroborated statements and items seized at Mobile MechanicXX, among other evidence, "show[] that Hester's mechanic shop was the centerpiece of his drug-dealing business," as the district court held. Again, there is no clear error because this was "plausible in light of the record as a whole." *Juarez-Duarte*, 513 F.3d at 208.

### v.   Organizer Enhancement

Under U.S.S.G. § 3B1.1(a), the district court can apply a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]"

Hester notes that his role in the drug distribution does not fit within this provision, which considers whether he

> exercise[d] . . . decision making authority, the nature of participation in the commission of the offense, the recruitment of

accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1(a) Application Note 4. According to Hester, "[n]o one testified [that he] displayed these controlling behaviors[,]" and even if some factors point to leadership, this does not necessarily mean that he was a leader. Meanwhile, the Government points to his position atop an organizational chart found at the auto shop, testimony indicating that Hester was "in charge" and "the boss," and his provision of supplies for his workers, among other evidence. Considering such evidence, the district court did not clearly err in holding that Hester qualified for the organizer enhancement.

Therefore, the district court did not clearly err in its calculation of Hester's base offense level and its application of the challenged sentencing enhancements.

## III. CONCLUSION

In summary, for the foregoing reasons, we AFFIRM the judgment of the district court.